# CASES

## ARGUED AND DETERMINED IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT ATLANTA, AUGUST TERM, 1857.

*Present—JOSEPII H. LUMPKIN,
HENRY L. BENNING, } Judges.

---

HENRY SINGLETON, executor, plaintiff in error, vs. MARGARET COTTON, defendant in error.

[1.] Delivery is essential to a gift, *mortis causa.*

[2.] Saying "I give," without an act, does not transfer the property.

[3.] Where an actual delivery is impossible, from the nature of the case, the gift may be manifested by writing; but even this is a relaxation of the ancient rule upon this subject.

In Equity, bill *quia timet* and *rule nisi*, for new trial in Monroe Superior Court. Decision by Judge POWERS, at March Term, 1857.

This bill was filed by Henry Singleton, executor of the last will and testament of John Cotton, deceased, against Margaret Cotton, the widow of the said John Cotton.

The bill states that John Cotton departed this life on the 4th day of July, 1850, leaving, in full force, his last will and testament, whereby he devised and bequeathed his whole estate, real and personal, to his wife, the defendant, for life, with remainder over, &c.

The bill further states, that said will was duly admitted to probate and record, and complainant qualified as executor

---

* Judge McDonald was absent during this Term, on account of sickness.

thereof, and took upon himself the burden of its execution. That after paying the debts and pecuniary legacies, he turned over to Margaret Cotton, the widow and defendant, all the remaining portion of the estate, to be held and enjoyed, and used by her as provided in said will. And amongst other things, he turned over, and paid to her, in cash and solvent notes, five thousand nine hundred and forty dollars and forty-one cents ($5,940 41.)

The bill charges that defendant sets up an absolute title to the money and notes, thus turned over to her, and claims the same absolutely, and not simply as a life estate, as declared and provided for in said will; and that she has made threats that the said notes and money should never come into the hands of the remainder-men. The bill alleges that the fund is in danger, and that complainant believes that defendant will appropriate it as her own property, and exhaust, squander or destroy the same, so that the remainder-men will be deprived of the same; and their rights endangered and defeated, unless the defendant is restrained by this Court; that defendant has no property or means, by or out of which compensation or indemnity could be made to the remainder-men, except the estate given her by said will, and which is for her life only.

The bill prays for a writ of *quia timet*, to restrain defendant from the waste, destruction and consumption of the said sum of $5,940 41, in money and notes, to be directed to the Sheriff, requiring him to arrest the defendant, and her safely to keep until she enter into bond, in an adequate amount, and with adequate security, conditioned for the forthcoming of said money, and funds, and notes, at her death to be delivered to complainant, as executor and trustee for remaindermen, &c.

This bill was verified by the affidavit of complainant, sanctioned by the Chancellor, and a *fiat* for the writ *quia timet* to issue as prayed for, &c., and that defendant enter into bond

in the sum of seven thousand dollars, conditioned for the forthcoming, &c.

The answer of the defendant admits that John Cotton died as stated in the bill; that he left a will, a true copy of which is annexed as an exhibit to the bill; and that complainant is the executor thereof, and trustee of Martha Dukes, as therein stated; that testator left a large estate, both real and personal. But she denies that complainant paid, and turned over the cash and notes mentioned, or that the same were ever in his hands, or possession; and she avers that they constituted no part of the estate of testator, at the time of his death, but was the individual property of respondent; that testator, during his last illness, and while of sound mind, and fully capable of making gifts and contracts, gave and delivered to her, all his cash on hand, and notes, to be the absolute property of respondent, and freely and fully parted with said cash and notes, and gave the same to respondent, as her own property in *fee simple*. Respondent admits that said cash amounted to the sum of $3000 00, and the notes to $3618 55, and that they are good and solvent.

There was a note on Peter Jones among the rest, which was delivered up to him; respondent making no objection; leaving a balance of $5,940 41, as stated in the bill. She admits that she takes only a life estate in the property given to her by said will, but denies that the notes and cash aforesaid are disposed of thereby, but claims that the same was given to her by her husband, and has been in her possession ever since, except for a short time, when she permitted the executor to have them, for the purpose of making a memorandum and inventory thereof. She admits that she has no property in fee, except said cash and notes, and has a life estate in the property bequeathed to her by her husband.

*Brief of Evidence.—For Complainant.*

First, the will of John Cotton, and the appraisement of his estate.

*Peter Jones* testified that he was acquainted with John Cotton; found among his property, at his death, $3,000, in money, and as much as $3000 in notes. The money was changed into a certificate of deposit, which was appraised; the notes were also appraised. Witness carried the money to Macon and got the certificate of deposit, and it remained in his possession until the money was drawn out of the bank.

Was with John Cotton when he died; he died in Macon; had been traveling; he lived in Monroe county; was sent for to Macon; he thought it was his last sickness; was from home; he called witness to his bedside, and said, Peter, do you know where my money and notes are? told him I did not; he said did I not tell you before I left home? Witness answered him, that he did not. He said I thought to do so. He then spoke to his wife, and said, Peggy, don't you know where they are? She said she did not. He then replied, "I will tell you now, for fear that I never may tell you." He then told us, when we went home, to look in a room up stairs in a bolt of bagging, that had never been undone, and we would there find it. He told her to take it, "take care of it, don't waste it, for you don't know but what you may come to want before you die." Found the money where he described; was with Mrs. Cotton when she went to find the money; that was at the house of John Cotton, deceased, Mrs. Cotton's place of residence. There were two notes of witness—one for $100, the other for $300. Mrs. Cotton gave these notes to witness, and gave him the money to carry to Macon and deposit it in a bank, and took the certificate of deposit in witness' own name, and offered it to her. She requested witness to keep it, which he did, until the money was taken out of bank; was present at the appraise-

ment; mention was made of the money and notes; Mrs. Cotton refused to give them up; she said they had no business with the money and notes; there was no lawyer present to advise her how to proceed; she refused the first day to have the money and notes appraised. The appraiser returned a second time to appraise the money and notes. The certificate was in possession of witness. Mrs. Cotton gave me the notes, and instructed me how to give them to the appraisers; to hand them, (the notes) one at a time, taking back the first before witness handed them the second, &c. Mr. Cotton made his will in July, 1850, before witness got to Macon. He died the 4th July; it was made before the conversation above related, between us in Macon; no delivery or attempt to deliver the notes and money at the time. Mr. Cotton's house is 14 or 15 miles from Macon.

There was a verdict for .complainant, and that defendant give bond and security for the forthcoming of the money and notes.

Defendant moved for a new trial, which the Court, after argument, granted; and to his decision, granting a new trial, complainant excepted.

PINCKARD & STEPHENS, for plaintiff in error.

STUBBS, HILL & TRACY, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The testator, Cotton, is alleged in the bill, to have left upwards of $6000, in cash and notes, to Mrs. Cotton, during her life. Two days after the will was made, the widow claims that the whole of this was absolutely given to her by her husband, in contemplation of death. She swears that "he gave and delivered this cash and these notes to her, in fee, in the

presence of sundry persons." When an inventory was taken of the estate, these effects, after some hesitation, were exhibited by her to be appraised; the executor immediately thereafter, returning them to her.

It appears from the evidence of Mr. Jones, who was the only person present, when this alleged gift was made, that the testator was taken sick in Macon; that he sent for his wife, to Monroe county, the place of his residence, and disclosed to her and Mr. Jones, that the cash and notes were secreted in a bolt of cotton bagging, in his house in Monroe, and admonished her to take care of them, for that she might need them before she died. She came into the possession of them some five days afterwards.

We see no material discrepancy between the answer of Mrs. Cotton and the testimony of Mr. Jones. She manifestly, did not intend to say, that the cash and notes were actually delivered in Macon. Mrs. Cotton, we apprehend, would not have so sworn. But the solicitor who drew her answer, used this language as the conclusion of the law, upon the facts, as they existed. Mr. Cotton, not having it in his power to make an actual delivery, the solicitor supposed that he had done all that the law required, under the circumstances. But, in this, he was mistaken. It is well settled, that a donation *causa mortis*, is not good without a delivery; and if an actual delivery cannot be made, as of a ship at sea, a negro not present, it should be manifested by writing. And this Mr. Cotton could have done; but this he did not do, nor attempt to do. And even this is a relaxation of the old rule, to which the modern decisions are returning. 2 *Ves.* 120.

As a *donatio causa mortis*, then, the gift was bad for want of delivery. Indeed, the terms employed did not amount to a gift. And the key to the remarks of the deceased, is, that it was intended, simply, to apprize his wife and friend, Mr. Jones, of the place where his treasure was concealed, a life estate in which he has just given to Mrs. Cotton, by his will. And

under this view of the case, we think the Court should not have disturbed the several concurring verdicts in favor of the bill filed by the executor to secure this property against waste.

Judgment reversed.