## GRAY, administrator, *vs.* HAMIL.

One of two partners having by the excessive use of stimulants voluntarily disabled himself from performing service in the firm affairs, and thus cast upon his copartner more than a due share of labor, his agreement after dissolution but before full settlement and final division of the assets, to allow his copartner, out of the assets, a specific sum per month for a definite number of months for past service, so as to equalize to that extent the difference resulting from the failure of one to do his part, and the overdoing by the other of his part, is not without consideration, but is supported by a strong moral obligation, which, under the code, is sufficient to render the agreement obligatory as a contract.

July 31, 1889.

Partnership. Contracts. Consideration. Before Judge FORT. Sumter superior court. November adjourned term, 1888.

The bill of W. C. Gray, administrator of J. R. Hamil,

charged as follows: For several years prior to and until 1884 and during a part of that year, said J. R. was in partnership with A. J. Hamil, carrying on a general mercantile business, a lime business, and a business in making brick and building houses for themselves and others; they being equal partners. As part of the partnership business, they built four certain storehouses, and accumulated several thousand dollars worth of notes and accounts. J. R. Hamil died intestate in December 1884, and since his death, A. J. Hamil, as surviving partner, has collected money which he fails to account for. There are no existing liabilities of the firm. The partnership owned nine shares of certain stock, of which said A. J. has taken possession and which he holds. He has collected certain rents in which the estate of J. R. has an equal interest, and has possession of a rent contract in which the estate of J. R. is interested to the extent of one half. He owes the estate of J. R. $900, the difference in value of two stores, of which, in a division, one fell to J. R. and one to A. J. He has the possession of a mule, wagon, etc. which belonged to the partnership, and in which the estate of J. R. has a half-interest, and for which A. J. fails to account   The bill prays for accounting, deposit of books, etc.

The answer of A. J. admits that the partnership business was formed in 1874 and finally dissolved in February, 1884, and that he and his brother, J. R., were interested in the brick business; but says this was distinct from their mercantile business, and that the profits arising from the brick business were finally settled long before the death of J. R.  For several years before his death J. R. was in wretched health, and from September 1st, 1882, to February, 1884, the whole burden of the firm business fell upon respondent. J. R. recog-

nized this fact, and agreed to pay respondent therefor $80 per month, to be paid by the firm. At or about the time of dissolution, a division was made of the property and assets of the firm, and by the request of J. R. respondent retained possession of assets that were not divided, including the uncollected notes and accounts, and J. R. agreed that respondent should have 10 per cent. of what he collected from these. Before J. R. died, respondent collected from these $1,034.75, but paid J. R. his half without deducting his commissions,. uncollected assets being left in respondent's hands, and it being contemplated that this account should be settled in the final division. Hamil Brothers did not own nine shares of the stock as charged, but did own seven shares. This stock was not divided because J. R. agreed that A. J. should take the half-interest of J. R. at $393.75, as a credit on A. J's account for services. The agreed difference between the houses mentioned was $700 and not $900, and this $700 was paid to J. R. before his death. Respondent also makes answer as to the mule, show-case, etc. He admits that he has collected $246.65 from the notes and accounts, of which sum no division has been made, and that he has received 1,500 pounds of cotton as rent for 1884, which cotton he sold for $150; and while this cotton was not partnership property, one-half of the $150 belongs to. the estate of J. R., etc.

The issues made by the bill and answer were referred to a master, to take an account and decide all matters of law and fact involved. The master reported, in substance, as follows: The parties had agreed as to many things, and hence he only reported upon disputed matters. In February, 1874, the brothers went into a partnership in the mercantile business, which continued until January, 1884, when it was virtually dissolved,

there being at that time a division of all the property of the firm except some minor articles to be specified hereafter; the indebtedness of the firm, which was small, was to be paid by A. J., and money was left in his hands for this purpose, which he seems to have properly applied; the notes and accounts were not divided but were left in the hands of A. J. for collection, J. R. taking no responsibility for the collection and performing no labor about them, but agreeing that A. J. should receive ten per cent. on amounts collected for his service in collecting them. On this account A. J. paid J. R. $1,034.75, on which A. J. claims he is entitled to a credit of $103.47. As to this the master holds that the claim of A. J. should be allowed, the service having been rendered by one partner, who assumed all responsibility, after the virtual dissolution, and the evidence showing that there was a special contract to this effect. The evidence shows that only seven shares of the stock in question belonged to the firm, the other two shares having been purchased by A. J. individually. The master therefore holds that the firm owned only seven shares of the stock. During the existence of the partnership, the firm bought a lot of land and put up two stores on it. Prior to the dissolution, the brothers agreed that A. J. should take one and J. R. the other store, and for a difference in the value of the stores A. J. was to pay J. R. $700. The question to be decided is, whether $600 or $700 was paid. The evidence upon this point was by three witnesses, each of whom swore that J. R. told him or her that A. J. had paid this money. The master therefore holds that no charge should be made against A. J. on account of the difference in the value of these stores. During the latter part of the partnership, J. R. paid very little attention to the firm business, being

incapacitated by his physical and mental condition, and while sane, almost constantly under the influence of whiskey and morphine, much of the time sick, and a considerable part of the time away from the town. It is insisted by defendant that, in consideration of the foregoing facts, J. R. agreed that A. J. should be allowed compensation for seventeen months at $80 per month, and that A. J. should receive as a credit therefor one half this amount, or $680. The evidence upon this point was given by one Scarborough and by the wife of defendant. Scarborough testified that, after the dissolution, J. R. told him that A. J. claimed compensation for service while J. R. was sick, at the rate of $80 per month; that he (J. R.) thought that reasonable and he did not see why A. J. should not have it; and that A. J. and J. R. made a contract to this effect in Scarborough's presence. The wife of A. J. Hamil swore that, in October, 1884, J. R. told her that the firm owned some stock; that he had agreed to sell it to A. J. and charge $112.50 per share, which was to go as a credit to A. J. for his services in the store when J. R. was sick; and that he had agreed to allow A. J. $80 per month for his services while he (J. R.) was sick, and this allowance was to be for seventeen months. The master holds that this evidence was not sufficient to show such a definite special contract, binding upon both parties upon the question of this allowance, as would take the matter out of the general rule that it is the duty of every partner to devote his services to the common benefit of the concern without any reward, unless it be expressly stipulated for. All the evidence shows that every time A. J. paid J. R. any money he took a receipt for it; the conclusion of the master from this fact being, that if there had been such a contract, A. J. would have had some more conclusive evidence of

it than mere sayings of J. R., who was under the influence of some stimulant much of the time. The master therefore holds that this credit of $680 should not be allowed the defendant. He holds that the seven shares of the stock should be sold and the proceeds equally divided between complainant and defendant; that one half of the $246.65 collected by A. J. and not paid to J. R., less ten per cent., should be charged against defendant, as well as $75, one half of the proceeds of rent cotton; that defendant should be charged $12.21, half interest in certain syrup; that he should be credited with $143.47 on account of commissions above set forth, and $15.96 for an account admitted to be correct. The master recommends that certain named parties should take charge of the uncollected notes and accounts and divide them, or sell them and divide the proceeds, etc.

The evidence introduced before the master seems to have been sufficiently stated above. There was no evidence before him of any written articles of partnership. To this report A. J. Hamil filed exceptions of law, because (1) the master erred in finding against his claim for $680 for services rendered during the period of seventeen months prior to January 19, 1884, the date of the articles of dissolution; and (2) the master erred in holding that one-half of the seven shares of stock was the property of the estate of J. R. Hamil, deceased. Also two exceptions of fact to the effect that the master erred in holding against him as to the claim for $680, and as to the shares of stock, said holding being contrary to the evidence on these questions, and the evidence supporting said claim being uncontradicted and sufficient to clearly establish it.

The jury found for the exceptions and against the report, and a decree was entered accordingly; one half of

the value of the seven shares of stock being applied as
a credit in favor of the administrator upon the claim of
$680 made by respondent for his services, the title to
the seven shares being decreed to be in respondent, etc.
No evidence was introduced save that reported by the
master. The complainant moved for a new trial on
the following grounds :

(1–2) Error in overruling complainant's motion to
strike the exceptions, in sustaining them, and in sub-
mitting issues of fact on them to the jury.

(3) Error in holding that on the trial of the exceptions
of fact, defendant was entitled to open and conclude.
(Upon this ground the court makes the following note :
After the court ruled that respondent had the first strike
and was entitled to open and conclude, which ruling
was made when counsel began to strike the jury, counsel
for respondent introduced and read to the jury certain
portions from the master's report of the evidence bear-
ing upon the questions raised by the exceptions, and
also copy of the articles of dissolution, and closed ;
counsel for plaintiff then introduced and read all the
other evidence from the master's report ; the court ad-
mitted this evidence after asking counsel for respondent
if there was any objection, and there was none ; after
the introduction of evidence by both parties as aforesaid,
no question was made or decided by the court as to who
had the right to open and conclude.)

(4–5) The verdict was contrary to law and evidence.

(6) Error in refusing to charge thus : One partner
cannot receive from the other partner, or from the part-
nership [compensation] for services rendered to the firm,
unless an agreement to pay for such services was incor-
porated in the articles of partnership, or made during
the continuance of the partnership ; an agreement made
after dissolution to pay for services rendered during the

partnership after the division of the partnership assets, is without consideration, and is not such an agreement as can be the basis of a recovery in this case.

(7) Error in refusing to charge thus : If an agreement to pay A. J. for extra services was made and entered into and afterwards A. J. paid J. R. large sums of money, the presumption of law would be that said claim for services had been paid; and to overcome that presumption, defendant would not only have to establish the contract of agreement but would have to go further and show that the sum was unpaid.

(8) Error in charging, in the statement of the issues involved, as follows : That that firm was never completely dissolved ; he contends that A. J. Hamil is indebted to the estate of J. R. Hamil in a considerable sum of money by reason of the failure to the dissolution of the firm. This bill was filed for the purpose of effecting a final settlement between the estate of Jno. R. Hamil, the deceased partner, and A. J. Hamil, the living partner. A. J. Hamil comes into court and admits that there had been a firm of Hamil Brothers, of which his deceased brother and himself were the members. He represents that they have dissolved, and that they have not completely settled but had nearly settled their affairs during the lifetime of his brother. He represents further that whilst his brother was in life, for several years before his death, deceased was unfortunately addicted to the use of stimulants which rendered him incapable of discharging his full duty to the firm ; that by reason of this disability, he made a bargain with him, whereby in consideration of A. J. Hamil performing all the services of himself and his deceased brother, he was to be paid by the partnership a certain sum of money ; that the bargain was made and entered into by reason of the incapacity of J. R. Hamil to discharge his

full duty to the firm; that it was mutually agreed between the parties, in pursuance of this bargain, that certain shares of stock in the Planter's warehouse were to be transferred to A. J. Hamil in extinguishment of his claim, so far as they would go for that purpose.

(9) Error in charging that the presumption of the law is, that the finding of the master that there was no sufficient evidence of such contract is correct, but that presumption is not conclusive; while it is a presumption of the law, it is for the jury, when they have seen and read the testimony, to say whether or not, in their opinion, the contract has been established; and if they shall be of the opinion, under the evidence, that the contract had been established and are so satisfied, they will be authorized to disagree with the master upon that subject and to find in favor of the exceptions.

(10) Error in charging thus: Ordinarily the rule of law is, that where two men enter into a partnership without any express understanding as to the respective duties of each, but where it is contemplated that each should give his individual services to the firm, if such be the fact in this case, then each partner will be bound to give to the firm his full attention, care, diligence and labor, at least a sufficient amount to carry on the business of the firm; that being the measure of his duty, it would follow, as a general rule, that he would be entitled to no compensation for anything he might do for the firm in that respect; if, however, there was an express agreement to the contrary, this would modify the general rule, and such express agreement might be enforced, if it was otherwise a legal contract.

(11) Error in refusing and failing to charge the jury on the question, insisted on by complainant, as to the effect of an agreement to pay for services after the dis-

solution of the firm and after the time the services were
to be performed.

The motion was overruled, and complainant excepted.

J. A. ANSLEY and E. A. HAWKINS, for plaintiff.

GUERRY & SON, 'E. G. SIMMONS and B. P. HOLLIS, for
defendant.

BLECKLEY, Chief Justice.

As to matters of practice, taking the whole record
together, with the explanations given therein by the
presiding judge, we are unable to discover any error;
and as to the merits, we think there was evidence
which justified the jury in arriving at a conclusion dif-
ferent from that which the auditor reached. This
leaves, as the controlling question of the whole case,
one matter of law only, viz. whether, under the facts
proved, an agreement was obligatory, made by one of
the partners, J. R. Hamil, to allow the other, A. J.
Hamil, a fixed compensation, to wit, $80 per month for
seventeen months, for services rendered by the latter
whilst the former was incapacitated to do his part as a
member of the firm, his incapacity (as might well be
inferred from the evidence) being a voluntary one,
brought on by him during the existence of the partner-
ship through the excessive use of stimulants.

The agreement was made after the dissolution, but
before the business was entirely wound up and before
the assets had all been divided. The general rule, no
doubt, is, that a partner is entitled to nothing extra for
any inequality of service rendered by him as compared
with that rendered by his copartner. The authorities
to this effect are so numerous and so uniform that they
need not be cited. It is equally clear that an express

agreement made by the partners with each other, either
in the partnership articles or upon a valid considera-
tion outside of them, for such allowance, can be en-
forced. The ultimate question, therefore, is, whether
there was such consideration for the agreement in the
present case. That the circumstances proved raised a
strong moral obligation upon the disabled partner, his
disability being voluntarily contracted, to pay for ser-
vices which he ought to have rendered, but which his
copartner rendered for him, admits of scarcely any
doubt. According to the common law as now gener-
ally understood and administered, such an obligation
would not suffice as a consideration for an executory
promise. Chitty Contr. (11 Am. Ed.), 52 *et seq.*; Whar-
ton Contr. §§512, 514; Bishop Contr. §44; Hare
Contr. 262 *et seq.*; Lamphigh *vs.* Brathwaite, 1 Smith
Lead. Cas. 151, notes; 3 Am. & Eng. Encyc. of L. 840.
Our code, however, (§2741) expressly recognizes a
strong moral obligation as a consideration for a con-
tract; and we see no reason for confining this to exe-
cuted contracts, especially in a case of such strong
natural equity as the present. *Parrott vs. Johnson*, 61
*Ga.* 475 (3). Taking the evidence on this subject as
true, the parties must have had their attention directed
deliberately and minutely to the questions both of the
right to and the exact amount of the compensation.
They thus settled for themselves the precise measure of
inequality between them in the distribution of the as-
sets thereafter to be completed, and we think with the
court below, that such an adjustment of their respective
equities made by themselves should be left to stand.
Though courts will not undertake to equalize partners
with reference to the personal services rendered by
them respectively in conducting the firm business,
there is no reason why the parties cannot and should

not do it by their own voluntary agreement, whether made before or after the services are rendered. If delayed till afterwards, the agreement should not be enforced unless manifestly just and equitable; but if manifest justice and equity will not generate a strong moral obligation, such as the code comtemplates when treating of a good consideration for a contract, we know not what would.

We find no error for which there ought to be a new trial.

Judgment affirmed.