## SORRELLS *v.* COLLINS.

1. In order to constitute a valid gift of personalty made by one in view of impending dissolution, it is not necessary that there should be a delivery of the property to the donee personally; but such a delivery may be effected and the gift rendered valid by a delivery to a third person in trust and for the benefit of the donee.

2. If personal property be delivered by the owner to another for a third person with the intention of making a donatio causa mortis at a time when the donor is not in his last illness, this, without more, would not be sufficient to effectuate the gift; but if the donor, while in his last illness and conscious of the approach of death, reaffirms the gift, and requests the person receiving the property to retain possession and deliver to the intended donee after the donor's death, this would be the equivalent of a new delivery, taking effect from the time such request was made.

3. Applying the rules above laid down to the evidence disclosed by the record in the present case, the court erred in directing a verdict against the alleged donee, and ought to have submitted the case, under proper instructions, to the jury.

Argued March 14, — Decided April 9, 1900.

Interpleader. Before Judge Gober. Cobb superior court. February 18, 1899.

*Mozley & Griffin,* for plaintiff in error.
*Morris & Green* and *Thomas Hutcherson,* contra.

LEWIS, J.  This was a petition for interpleader, filed in Cobb superior court by Mrs. Octavia H. Humphries against John S. Collins and Mrs. C. C. Sorrells.  The petition alleged, in substance, as follows:  Petitioner is in the possession of $158.55, which sum is claimed by each of the defendants.  The possession was obtained as follows: Mrs. Louella Collins, wife of John S. Collins, died on July 24, 1896.  Sometime before she died she came to petitioner and stated she had a package which she wanted petitioner to deliver to her mother, Mrs. C. C. Sorrells, in case of her death.  Mrs. Collins delivered to petitioner the package for that purpose.  She did not state its contents.  Mrs. Collins was taken sick on June 24, 1896, and died in July following.  During her last illness she frequently spoke to petitioner about the package, and enjoined upon petitioner, in case of her death, to deliver the package to Mrs. Sorrells. Petitioner accepted and held the package for the purpose of making the delivery in accordance with the request of Mrs. Collins.  John S. Collins claimed the money after the death of Mrs. Collins, his wife, as her sole heir at law; and Mrs. Sorrells, the mother of Mrs. Collins, claimed it as a gift from her daughter.

The order of interpleader was granted, and the case went to trial on the issue made by the answers of the two defendants, each claiming the money as above indicated.  Mrs. Humphries, the petitioner, was sworn as a witness, and testified, in substance, that Mrs. Collins delivered the package to her after she and her husband had separated in October before she died.  She came to the home of witness and asked her to take charge of the package, and requested witness, if she should die without making any disposition of it, not to tell any one where it was, or what it was, but to give it to the mother of Mrs. Collins.  It was discussed as to where the package should be placed, and at the suggestion of witness it was put under the carpet in witness's home. Mrs. Collins was in wretched health at the time, and had been for several years, though she was up most of the time.  She never got well, but she got better.  During the last illness of Mrs. Collins witness was at her home frequently, and she would repeatedly admonish witness to do what she had told her about the package.  The last conversation between witness and Mrs.

Collins about the package was a short while before the latter's death, and during her last illness.   In it she enjoined witness particularly to do with the package, which was then in the house of witness, where it was first deposited, just as she had previously told her to do.   After the death of Mrs. Collins, Mrs. Humphries carried the package to Mrs. Sorrells, who was distressed at the time because John S. Collins, her son-in-law, had accused her daughter of stealing his wife's gold; and it appears that for this reason Mrs. Sorrells did not then wish to keep the package, and returned it to Mrs. Humphries.   It appears from the record that Collins had charged Mrs. McEver, his wife's sister, and Mr. Sorrells, the husband of Mrs. Sorrells, with stealing the money, and a criminal prosecution was instituted on this account.   There was further testimony introduced on the trial, tending to show that in the last interview had between Mrs. Collins and Mrs. Humphries, the former was in a dangerous condition, and apprehended that she might not live but a little while.   There was also some testimony showing that she was treated harshly by her husband during her last illness, he having returned to her after their separation before her death.

At the conclusion of the testimony, which is substantially set forth above, the court below, on motion of counsel for John S. Collins, granted the following order:   "This evidence makes a close case to my mind.   You have the evidence though, and I wish you would carry it up to the Supreme Court, and see what they will do with it.   Therefore, I will direct a verdict."   A verdict was accordingly directed by the court in favor of John S. Collins and against Mrs. C. C. Sorrells; whereupon the latter made a motion for a new trial, which was overruled, and in her bill of exceptions she assigns error in the judgment of the court overruling her motion.   Besides the general grounds, the motion for a new trial contains the further ground that the court erred in directing a verdict in favor of Collins and against movant.

1. It was contended by counsel for defendant in error that, under the evidence, there was not such a delivery of the property in question by the donor to the donee as was necessary under the law to constitute a valid gift.   The Civil Code, § 3574, declares: "A gift in contemplation of death (*donatio causa mortis*) must

be made by a person during his last illness or in peril of death, must be intended to be absolute only in the event of death, and must be perfected by either actual or symbolical delivery. Such a gift, so evidenced, may be made of any personal property by parol, and proved by one or more witnesses." From the wording of the statute it will be readily seen that it is not absolutely necessary, in order to constitute a valid gift of this sort, that an actual delivery shall take place from the donor to the donee, but that a symbolical delivery of the personalty may as effectually convey title as an actual delivery. But we think it very clear that an actual delivery takes place whenever the owner of the property delivers the same to a third person, charging him with the trust of keeping it for the benefit of the named donee. There is nothing in the decisions of this court, cited by counsel for defendant in error, at all in conflict with this view of the law. For instance, in the case of *McKenzie* v. *Downing,* 25 *Ga.* 669, it was decided that, to complete a gift mortis causa, there must be a delivery of the thing given. On page 670 McDonald, J., delivering the opinion, says: "There was no delivery of the check to the payee or to any one else for him. It remained in the custody of the drawer." There seems to be a clear intimation in the opinion that had the owner of the check delivered the same to any one else for the benefit of the payee, the delivery would have been as effectual as if he himself had handed it directly to the payee. We are aware of authority to the effect that a delivery of property to a third person as the agent of the donor is not sufficient; but it does not follow from this principle that a delivery to one in trust for the donee is not a sufficient delivery. In 14 Am. & Eng. Enc. L. (2d ed.) 1060, it is declared: "The delivery need not be to the donee personally; it may be made to a third person for him, and such delivery will be sufficient though the donor dies before the donee actually receives the property." See Thornton on Gifts and Advancements, § 36. There are several decisions in which this view of the law touching gifts causa mortis has been recognized by a number of courts of last resort in several of the States; but the principle is so well established, we deem it unnecessary to burden this opinion with a collection of such authorities.

2. It is true that such a gift made by one not during his last illness, without more, would not be valid. For instance, in this case, had the owner of this money, and the person to whom it was delivered for the benefit of the owner's mother, had no transaction or understanding with reference thereto except what occurred the October or November several months prior to her death, it would not have been an effectual donation, as it was not at that time made by a person during last illness, or in peril of death. We think, however, there was sufficient evidence in this record to authorize the jury to conclude that shortly before the donor's death, and during her last illness, she apprehended approaching dissolution; and, in this condition, a reaffirmance of the gift, and a request that the person to whom the property had been entrusted should retain possession of it and deliver it to the intended donee after the donor's death, would be clearly equivalent to a new delivery.

3. Applying the rules above laid down to the evidence disclosed by the record, we think the court erred in directing a verdict against the alleged donee, and ought to have submitted the case, under proper instructions, to the jury.

*Judgment reversed. All the Justices concurring.*