McMULLEN *et al. v.* STRIPLING, and *vice versa.*

LAMAR, J. The cattle were on a range, and therefore not susceptible of an actual physical delivery to the donee ; but it appeared that the donor subsequently refused to sell the same because they belonged to the plaintiff ; that the plaintiff gave money to her for the purpose of paying the taxes thereon ; that he exercised acts of ownership ; and that one of the defendants had recognized the title of the plaintiff. These facts were sufficient to sustain a verdict against the defendants, who claimed under a subsequent incomplete and defective gift.

*Judgment on the main bill of exceptions affirmed; cross-bill dismissed. All the Justices concur.*

Argued June 23,—Decided July 13, 1904.

Trover. Before Judge Covington. City court of Moultrie. December 15, 1903.

The action was by John R. Stripling against William McMullen and his wife, Rachel, for the recovery of five cows. The defendants in their plea averred that the cows were the property of Mrs. McMullen, having been given to her by her deceased sister, Mrs. Bryant. At the trial the plaintiff testified that the cows

were descended "on the side of the dam" from cattle given to him and his brother, ten or twelve years before, by Mrs. Bryant, who was his aunt. "My aunt moved to the eastern part of the county, and the cattle were carried there also; that was before she came to William McMullen's to live. . . My brother and I divided the cattle. We then called William McMullen out there and told him of the division. There was an odd one, and William McMullen said that, as I paid the doctor's bill and burial expenses, it was right for me to have that. . . I have not been in possession of the cattle since they were at William McMullen's. When I went after the cattle William McMullen said I could not get them unless I paid the expenses of my aunt, — said he would settle for $5 a month, and that he would take a fence rail to me if I started to move the cattle. . . I was in Mitchell county about two years. I left money with my aunt to pay the tax on the cattle, but do not know what she did with it." The first time he ever heard of the claim of McMullen was when McMullen chased him with a fence rail. Other witnesses testified that Mrs. Bryant refused to sell the cattle, and said she had given them to "the boys, a long time ago,"—"twelve or fifteen years." Dr. Hicks testified: "I went to William McMullen's to see one of the boys. While there William McMullen asked me to go in and see Mrs. Bryant. She had a cancer. . . William McMullen, before I went in, said she had some cattle; if I would get them from her he would buy them from me. She said the cows belonged to two orphan boys, and she could not sell them." George Stripling testified: "These cattle are J. R. Stripling's. Soon after Mrs. Bryant's death, Aunt Rachel McMullen told me if I would stick to her she would stick to me, and we would hold the cattle. Aunt Lizzie Bryant had given this bunch of cattle to me and J. R. Stripling, years before she died. After the above conversation, J. R. Stripling and I went to the McMullens' to divide the cattle. There was an odd one, and we referred it to Uncle William McMullen, who said that as J. R. Stripling had paid Aunt Lizzie's funeral expenses, he thought he ought to have it." Harrison McMullen testified: "My auntie came to my father's to live; said she had nothing but four head of cattle, to send and get them and do what he pleased with them. I went after the cattle; they were at the Bryant old place, in Brooks county. That was between seven and eight years ago. Witness tried to

buy one of the cattle from plaintiff." Willie McMullen testified : "I heard my auntie tell my father and mother she had nothing but four head of cattle and some few things in the house; to send and get the cattle and do what they pleased with them. My auntie lived at my father's about seven years. The cattle were there all the time after they were carried there." Peter Abbett testified : "The cattle were left at the old Bryant place, as Mrs. Bryant's. Plaintiff butchered one of these cattle and sold witness and John Herod the beef." William McMullen testified : "Mrs. Bryant wanted to come and live with us. She said she had nothing but a few household goods and four head of cattle, and if we would let her come, we could send and get the cattle and do as we pleased with them. I told her if she wanted to come she could do so. She had a cancer. . . My wife and daughter waited on her; she was not able to do anything. John Stripling came to me and asked me, if he would pay the expenses, if he could have the things. I told him he could. He told me they had divided the cattle. I told them there was no harm in dividing them, but they must not move anything till all the expenses were paid. Stripling said if I would take a reasonable sum he would pay it, but $5 a month was too much. . . One of the cows died soon after they were brought to my house, and what is there now was raised from them; there is nine head in all. I did not tell Dr. Hicks I would buy the cattle, but told him the cattle were — Mrs. Bryant and my wife was sisters. She was at my house about seven years. Stripling was never in possession of the cattle while they were at my house." The defendants introduced in evidence the tax returns of the plaintiff for several years prior to 1903. There was no return of cattle until that year.

The verdict was for the plaintiff. The defendants made a motion for a new trial, on the grounds that the verdict was contrary to law and the evidence, and to a specified instruction of the court; the motion was overruled, and they excepted. A cross-bill of exceptions was filed by the plaintiff.

*W. C. McCall,* for McMullen et al., cited Civil Code, §§ 3564, 3567, 5477; *Ga. R.* 1/595; 11/161; 30/267; 31/71; 112/465; 114/691; 119/458; Thornton on Gifts, §§ 140, 157.

*J. A. Wilkes* and *Shipp & Kline,* contra, cited Civil Code, §§ 3565, 3567, 3570; 79 *Ga.* 12–22; 110 *Ga.* 518–22.