23630. McCOWEN, executrix, *v.* McCORD.

DECIDED JULY 19, 1934.

*Hall & Bloch,* for plaintiff.

*Jones, Johnston, Russell & Sparks, Walter DeFore, James C. Estes,* for defendant.

JENKINS, P. J. This is a suit by an executrix against a widow for the principal sum of $3434 upon a promissory note, by which she obligated herself to pay a debt owing by her deceased husband to the plaintiff's testatrix. A verdict and judgment were rendered in favor of the defendant. It is undisputed that the note was given by the widow for a debt which had been contracted by the husband. There was no testimony to indicate that any agreement existed between the creditor of the deceased husband and the widow herself that her note was to be taken in extinguishment of the creditor's claim against the husband's estate. On the contrary, the evidence indicates that the defendant herself had no conversation at all with the creditor or any one representing the creditor with reference to the transaction. The defendant testified that "he [the administrator] just told me, when I inherited half of my father's estate, the nice thing to do was pay it when I could, and I just thought that was the thing to do, and I just signed it." It appears, however, from the evidence of the creditor's agent that the note was delivered to him by the administrator of the husband's estate, and that, "prior to his actually giving me the note, he had stated to me he would give it to me, provided I would withdraw the claim." The evidence shows that, upon the delivery of the widow's note by the administrator to the agent of the creditor, the creditor's agent then actually withdrew and destroyed the claim against the estate, with the result that the creditor did not share

with other creditors in the distribution made from the assets of the insolvent estate. Upon the question as to whether the administrator was the agent of the widow in the negotiations with the agent of the creditor, the administrator himself testified in effect that he was not her agent. But there was testimony by the widow, which, despite her subsequent modification and explanation, would have authorized a finding that the administrator, who conducted the negotiations culminating in his delivery of the note to the agent of the creditor, was her authorized agent during the summer of 1924 while she was out of the State. These portions of her evidence are as follows: "I was in Asheville in the summer of 1924. My father was ill and I was there with him, and I left everything with [the administrator] to wind up of Henry's estate, because I could not be down there, and went back up there with him. My father was up in Asheville ill when I came back. While I was there I left everything to [the administrator] to handle of my affairs and Henry's. Whatever he did with respect to them was all right with me. I knew nothing about business. I had no conversation with [the administrator] about giving this note before I went to Asheville. I did not discuss business when I went back, because I went back right away. . . I came back from Asheville that early fall, maybe the last of September or October." Later she testified: "In response to some of [the attorney for the plaintiff's] questions, about my turning things generally over to [the administrator] to handle, he was the administrator of the estate. I left [my husband's] affairs with [the administrator]. He did not have anything to do with mine. He had no authority to act for me except in matters where I specifically instructed him to. He was only administrator for [my husband's] estate. I have never authorized [the administrator] to make any trade for me about this Duke debt in any way." Again she testified: "In the summer of 1924 when I was in Asheville, [the administrator] was handling [my husband's] estate and all matters growing out of that estate. I did not know that he was having conversations with [the creditor's agent] with reference to this note. I did not know anything about any of the affairs going on at that time. The first I ever heard of the . . claim was when he told me to sign the paper. Up to that time he had been handling it. I knew he was handling all affairs growing out of the estate in general.

When I say the estate in general, I mean just [my husband's] estate and not me." The evidence indicates that the negotiations between the alleged agent of the defendant and the agent of the creditor continued intermittently during the spring and summer of 1924, and that a year's support of $3600 was set aside to the widow and her minor child and the money delivered to her in July, 1924. It is not clear from the evidence or from the note itself whether it was dated on March 13th or November 13th, 1924, but it is undisputed that it was delivered some time during the fall of 1924. While the agent of the creditor testified that, after the agreement by the alleged agent of the widow to give the note, he made no effort to contest the amount of the year's support, this agent did not testify, and there was no evidence by any witness, that the giving of the note was actually based upon any agreement or understanding upon his or the creditor's part not to contest the amount of the year's support, or that any reference was made to any such contest or forbearance, or that any contest was ever filed or contemplated. While disclaiming any knowledge of the "legal elements" which "go into the fixing of a year's support for a widow and child," the agent of the creditor testified on the trial that "$300 a month was not excessive as a year's support for [the] widow and child," and "would be a perfectly reasonable amount for Mrs. Jones [the widow] and a minor child, in accordance with the way they lived." The motion of the plaintiff for a new trial is based upon the general grounds, a special ground relating to the exclusion of evidence, which is dealt with in the syllabus, and exceptions to the charge of the court, which are considered in the opinion.

Exception is taken to the instruction that the plaintiff "says there was a consideration for this note, and before you can find for [her], you must believe there was a legal consideration for the note," that "the written promise to pay a note given without consideration is not itself binding on the promisor," that "before a note can be binding on any person, there must be a legal consideration, and if you find in this case there was no consideration, there is no binding obligation on [the defendant] to pay it," and like charges, as failing to charge the principle that, where a note is given under seal, a valuable consideration is presumed, and as placing the burden of showing a consideration upon the plaintiff. While it is true that a note prima facie is issued for a valuable considera-

tion (Civil Code, § 4241; Michie's Code, § 4294 (24)), there was no written request for such a charge. In the instructions complained of the trial judge was merely endeavoring to assist the jury in determining whether there was a valid consideration under the issue made by the evidence; and he was not there dealing with the burden of proof, for elsewhere of his own motion he correctly charged that, the defendant having admitted that she signed the note, the legal burden was upon her to sustain her contentions by a preponderance of the evidence. Since it was not in dispute that the instrument represented an assumption of the debt of the deceased husband, and since it is held that a legal consideration was therefore necessary, the instructions by the court to this effect were in themselves correct, and constituted no error in failing to elaborate the special principle relating to sealed instruments and promissory notes, in the absence of a written request therefor, where the court elsewhere properly instructed the jury that the burden was upon the defendant to sustain her contentions by a preponderance of the evidence.

The court charged as follows: "You have got to determine whether, under all the facts and circumstances of the case, [the administrator] was the agent of [the defendant] in the giving and receiving of this note. If you believe [the administrator] was the agent of [the defendant] in the giving and receiving of the note, and that by reason of the giving and receiving of the note a detriment was done to [the creditor], then you should find against [the defendant], and in favor of [the plaintiff]. If you do not believe that [the administrator] was the agent of [the defendant], you should stop right there and quit and say, 'We, the jury, find for the defendant.' But in case you do find that he was the agent, you must go a step further and also find from the evidence in the case that there was a detriment done to [the creditor]." Exception is taken to the statement that, if the jury should determine the question of agency in favor of the defendant, they should go no further, but find in her favor. It is contended that the note was supported by a consideration independent of any agreement by the defendant or by her alleged agent on her behalf; that the mere fact of widowhood and the assumption of the legal debt of the husband would of and in itself constitute a valid consideration. Since, under the rulings in the 1st, 2d, and 3d divisions of the syllabus, this

would not be sufficient, and since, under the undisputed evidence, the defendant widow did not contract personally with the creditor or the creditor's agent with reference to the alleged consideration, but the transaction was solely between the agent of the plaintiff and the administrator as the alleged agent of the defendant, the court did not err in instructing the jury that, if they found in favor of the defendant on the issue of agency, they should render a verdict in her favor.

Exception is also taken to those parts of the quoted instructions and similar instructions which refer merely to a "detriment" to the creditor, as thereby erroneously excluding the element of benefit to the widow. The evidence shows, without dispute, that the creditor in fact suffered detriment by withdrawing her claim against the insolvent estate, thereby failing to share in the distribution received by other creditors. If this had been done in accordance with an understanding had with the widow, a consideration for her promise would be shown. The detriment is undisputed. The question was, did the widow, by her authorized agent, contract for such conduct on the part of the creditor? Was it she, or was it only the administrator of the estate, who required that the claim against the estate represented by the administrator should be surrendered? This was the question, and it appears to have been the only question, made by the evidence. Although there was testimony by the creditor's agent that it was at about the time the year's support was being applied for and allowed that the administrator made the proposal that the note would be given if the claim against the estate was withdrawn, the note was not delivered until long after the allowance of the year's support; and there was no evidence that the agent of the creditor offered or agreed with the alleged agent of the widow that the creditor would not contest the year's support if the note was given, as was the case in *Golding* v. *McCall,* supra, or that there was any such implied idea or understanding in the minds of the creditor's agent and the alleged agent of the defendant. The evidence for the plaintiff goes no further than to show that, after the administrator's proposal to give the note if the claim against the estate was withdrawn, the creditor did nothing except to tear up the claim when the note was delivered in the fall of the year after the year's support was allowed in July. Neither the creditor nor her agent ever filed any objection to the year's support or its

amount, so far as the evidence goes. It appears that no such objection was ever in fact contemplated, since the testimony of the creditor's agent, who remained her only representative throughout the entire transaction, is that, while he did not "know what legal elements go into the fixing of a year's support for a widow and child," the $300 a month which was allowed "was not excessive," and "would be a perfectly reasonable amount for [the widow] and a minor child, in accordance with the way they lived." In view of the fact that it appears that no mention or reference to the year's support was ever made, that the evidence indicates that no such question was in fact within the minds of the parties, and that no request was made indicating that any such contention was relied on by the plaintiff at the trial, we do not think that the omission of the judge to charge on the question of benefit to the defendant would authorize setting the verdict and judgment aside; especially when it is considered that, if the jury had not found against the plaintiff on the question of agency, they would necessarily have found a verdict in favor of the plaintiff and against the defendant on the consideration shown by the undisputed evidence as to detriment. *Judgment affirmed. Stephens and Sutton, JJ., concur.*