### 10065. WADE, administrator, *v.* EDWARDS.

The verdict not being demanded by the law and the evidence, the trial judge did not abuse his discretion in granting a first new trial.

Where a deposit-book issued by a savings bank is delivered with appropriate words of gift by the depositor, with the intention to give to the person to whom it is delivered the deposits entered in the book, this is sufficient to constitute a valid gift of the deposits, without assign-

ment or transfer in writing. Whether such a gift was made in this case was a question of fact for the jury.

DECIDED APRIL 23, 1919.

Complaint; from Chatham superior court—Judge Meldrim. August 10, 1918.

*Osborne, Lawrence & Abrahams, Shelby Myrick,* for plaintiff in error.

*George W. Owens,* contra.

WADE, C. J. Julia Edwards brought suit against W. H. Wade, administrator of the estate of Isaac Waters. Her petition alleged that Wade administered on the estate of Waters at her request, and that "Isaac Waters, during his last illness, on or about the 2nd day of November, 1916, delivered to your petitioner, she being his sister, his bank-book on the Florida National Bank of Jacksonville, Florida, in the savings department of said bank, and told her that he wanted her to have the deposit which was to his credit in said bank, and gave to your petitioner said book, and made her a present of the deposit which was in said bank;" that "Isaac Waters made said gift to your petitioner in consideration of services she had previously rendered to him and was then rendering to him in his last illness." She further alleged that Waters died on November 5, 1916, three days after the alleged gift, at which time there was on deposit in said Florida bank to his credit the sum of $1,448.31, and that after the payment by Wade, as administrator, of all debts of the deceased, there remained in his hands the sum of $1,341.30, he having collected all of the money from the bank, as administrator; and that she was entitled to the $1,-341.30 "by virtue of the said gift of said bank-book and said deposit by said decedent."

The administrator filed an answer admitting all the facts set up in the petition except the allegations that the bank-book and the deposit had been given to the plaintiff by the decedent Waters, and that the money thus belonged to the plaintiff. These allegations were expressly denied, and the answer set up in addition that the decedent had made no disposition of his bank-book or of the funds in bank prior to his death, and that the money in the hands of the defendant belonged to the four children of the decedent.

On the trial of the case there was evidence adduced to substantiate the plaintiff's contention that the decedent had given to her the bank-book and the money represented thereby, for and

in consideration of several weeks nursing and attention. Lee Slocum, in behalf of the plaintiff, testified: "I was there on the morning of November 2, 1916, sitting in the room when he (the decedent) handed to Julia Edwards (the plaintiff) a bank-book, and said: 'Julia, I want you to have this money, that is something for you. I want you to have this for what you have did and are doing for me.' He handed the book to her." Phoebe Lawrence testified for the plaintiff as follows: "I was present when Waters gave Julia Edwards a bank-book, and know what he said to her. He said, 'Julia, here is this, take it for yourself for what you have done, now and for all time, take this.' I looked and he gave it to her and she took the bank-book. The book was handed to Julia Edwards in my presence. . . I know it was a bank-book. I saw the letters on the book." The evidence introduced in behalf of the defendant tended to dispute the plaintiff's evidence that the decedent had made her a gift of the book and the money. Laura B. Fleming testified for the defendant as follows: "I went to see my brother (the decedent), and as I got in the door, almost to the kitchen where he was lying, I heard him say, 'Is that my sister Laura now?' I said, 'Yes, here I am. What can I do for you?' He said 'I want to see my little children, where is my children?' in that dazed way. I said, 'I don't know.' I said, 'What else do you want me to do? Do you want some milk?' He said, 'No, I owe some little milk bill, ice bill, and doctor's bill. I want you to pay them. I have got some money. See that my children get it, will you?' I said, 'Yes, I will'. . . My sister was sitting on her back stoop. I don't know whether she could hear what was said or not." Julia Edwards testified that this conversation which the witness Fleming relates as having taken place between her and the deceased did not occur. The following receipt, introduced in evidence, shows conclusively that the gift in question (evidenced by the bank-book delivered to the plaintiff) was money deposited in the savings department of the Florida National Bank: "Savannah, Ga., January 25, 1918. Received from Geo. W. Owens, attorney at law, one bank-book on Florida Nat. Bank (Savings Dpt.), showing deposit of $1448.31. I have applied for letters of adm. on estate of Isaac Waters, in whose name book stands. Also rec. bill of Royall Undertakers. Administration to be applied for by me at February term of court. (Signed) W. H. Wade, Co. adm."

On the issue thus raised the jury found in favor of the defendant. The plaintiff filed a motion for a new trial, on general and special grounds. The trial judge rendered a written opinion granting 'a new trial on the ground that he was not satisfied with the correctness of the verdict. The defendant excepted to the grant of the new trial, and contended that the verdict was demanded by the evidence. As we view the evidence submitted on the trial and narrated above, the verdict was *not* demanded by the evidence. To constitute a valid gift, there must be an intention to give by the donor, acceptance by the donee, and delivery of the articles given, or some act accepted by the law in lieu thereof. Civil Code (1910), § 4144. There was in the instant case, according to the testimony of several witnesses, an intention on the part of the donor to give, as well as a consummation of the gift by the delivery of the savings-bank book to the donee. May a savings-bank book be the subject of a gift? Pomeroy, in his Equity Jurisprudence, Vol. 3, § 1148, collating all the authorities, states the law as follows: "All kinds of personal property, using the word in its broad, mercantile sense, as equivalent to assets, which are capable of manual delivery, and of which the title, either legal or equitable, can be transferred by delivery, may be the subject-matter of a valid donation causa mortis. . . The rule is now well established that all things in action which consist of the promises or undertakings of third persons, not the donor himself, of which the legal or equitable title can pass by delivery, may be the subjects of a valid gift, including promissory notes, bills of exchange, checks, bonds, mortgages, *savings-bank pass-books* [italics ours], certificates of deposit, policies of insurance, and the like; and it is settled by the recent courts that a valid donation of negotiable instruments may thus be made without endorsement." A deposit in a savings bank may be the subject of a gift, and where the owner of such a deposit, with the intention of making a gift, delivers his deposit book, containing entries of deposits in his name, to the intended donee, this constitutes a *complete* and valid gift of the deposit. 14 Am. & Eng. Enc. of Law, 1027. "A delivery to a donee, of a deposit book issued by a savings bank containing entries of deposits to the credit of the donor, with the intention to give the donee the deposits represented by the book, and accompanied with appropriate words of gift, is a sufficient delivery to con-

stitute a valid gift of such deposits, without assignment or transfer in writing." Polley v. Hicks, 58 Ohio St. 218 (50 N. E. 809, 41 L. R. A. 858).

Although there appears to be no direct authority in this State on the question under consideration, the general weight of outside authority is that a pass-book issued by a *savings bank* rests on a peculiar footing. . Such a book is the record of the customer's account, and its production authorizes control of the deposit. Like the key of a locked box, its delivery is treated as a delivery of all it contains. 8 Am. & Eng. Enc. Law, 1324, 1325; Pierce v. Boston Five Cents Sav. Bank, 129 Mass. 425 (37 Am. R. 371), and cases cited. It follows, therefore, that the delivery of the bank-book in this case, accompanied by the declared intention to give, the deposit being in a *savings bank,* constituted a valid gift of the money on deposit, of which the book was the evidence. Had the deposit been in a bank of issue, discount, and deposit, the rule would probably be otherwise. See Page v. Lewis, 89 Va. 1 (15 S. E. 389, 18 L. R. A. 170, and cases cited, 37 Am. St. R. 848). What is hereinbefore said is, we think, sufficient to dispose of the contention that "there could be no valid gift of a fund in bank either as a gift inter vivos or a gift causa mortis, by a gift of the bank-book (though designated a savings bank book) unless it was shown that by the rules of the bank or the law of the State where the bank was situated, the possession of the bank-book would be accepted by the bank as ownership of the fund, and unless it was further shown by the rules of the bank or the law of the State where the bank was situated that the production of the bank-book at the bank would be necessary before the bank would transfer the fund or deposit; there being no other evidence in the case than a statement that the bank-book given the plaintiff was a savings bank book of the Florida National Bank of Jacksonville, Florida, savings department, and a receipt from the administrator to the same effect."

The other contention of the plaintiff in error, that the evidence demanded a finding in favor of the defendant, is based on the idea that, "the plaintiff having voluntarily requested administration on the estate of Isaac Waters, and having voluntarily surrendered the bank-book to the administrator,—the defendant in the case,— she was and is now estopped from setting up any claim to the

funds or money represented by the bank-book under and by virtue of an alleged gift made to her by the deceased, the rights of the heirs at law having intervened 'and attached to the funds and money in the hands of the administrator." This contention is likewise without merit. As against the rights of creditors, the law with reference to gifts causa mortis is identical with the law as to other gifts. "A gift causa mortis is not valid as against the creditors of the donor where there is a deficiency of assets. If the assets of the donor's estate are not sufficient to pay his debts, the administrator can recover the subject of the gift from the donee for the purpose of satisfying the claims of the donor's creditors. But where the property is thus recovered and used for this purpose, any residuum that may be left after payment of the donor's debts belongs to the donee and not to the donor's estate." 14 Am. & Eng. Enc. Law, 1066 (b), and numerous cases there cited.

It being clear that the verdict in favor of the defendant was not demanded by the evidence, the case is controlled by the axiomatic rule stated in the recent case of *Park* v. *Stevens*, 21 *Ga. App.* 180 (94 S. E. 60) as follows: "It may be now considered as settled that this court will not, under any circumstances, reverse a judgment granting a first new trial, whether the grant be general upon all the grounds of the motion or special upon one or more grounds only, or whether it be upon a ground which involves purely questions of law; unless it is made to appear that no other verdict than the one rendered could possibly have been returned under the law and facts of the case. Unless the case can be brought within the exception just stated, it is useless for parties to bring before this court the judgment of a trial judge granting a first new trial." Civil Code (1910), § 6204.

*Judgment affirmed. Jenkins and Luke, JJ., concur.*