LASSITER, administrator, *v.* BANK OF DAWSON *et al.*

No. 13419.   NOVEMBER 19, 1940.

*R. R. Jones,* for plaintiff in error.

*W. L. Ferguson, M. C. & Tom Edwards,* and *Farkas & Burt,* contra.

BELL, Justice. ■ In view of the amendment offered by the plaintiff in error for the purpose of naming additional parties as defendants in error, there is no merit in the first ground of the motion to dismiss the writ of error. So far as the Dawson Methodist Church is concerned, the petition prayed for process only against J. P. Perry as chairman of the board of stewards; the church *as such* was not served, and did not appear by answer or

otherwise, appearance having been made only by Perry and other individuals composing the board of stewards. Accordingly, the Methodist Church as such was not made a party in the trial court, and did not become a party therein. Code, § 81-101; *J. K. Orr Shoe Co.* v. *Kimbrough,* 99 *Ga.* 143 (25 S. E. 204); *Callaway* v. *Douglasville College,* 99 *Ga.* 623 (25 S. E. 850); *Jones* v. *Bibb Brick Co.,* 120 *Ga.* 321 (48 S. E. 25). Ordinarily a plaintiff in error is not required to name any person as a party to the bill of exceptions who was not a party in the trial court. *Chason* v. *Anderson,* 119 *Ga.* 495 (46 S. E. 629); *Walker* v. *Ful-Kalb Inc.,* 181 *Ga.* 563, 569 (183 S. E. 776); *Hicks* v. *Atlanta Trust Co.,* 187 *Ga.* 314 (200 S. E. 301). Therefore the fact that in this case the church as such was named as a defendant in error and may not be a legal entity would not require dismissal of the writ of error, but such designation of the church as defendant in error should be treated as surplusage, there being other parties defendant in error. It follows that the only defect as to parties was the failure of the plaintiff in error to name as defendants in error the various individuals who composed the members of the board of stewards; and under the facts of this case as they appear from the bill of exceptions and the record, this defect may be cured by amendment. "Where a bill of exceptions which can be identified as excepting to a specific judgment shall be served upon counsel of record in the case, such service shall be held to bind all parties whom said counsel represented in the trial court. Where counsel shall acknowledge service upon a bill of exceptions, such acknowledgment shall be held to be a complete waiver of all defects in the service which the counsel signing it is legally competent to waive, whether such signing shall be done before or after the signing of the writ of error, unless counsel in the entry of acknowledgment shall distinctly and specifically state that it is not to be construed as waiving some particular defect then pointed out by him. If such acknowledgment of service shall be properly entitled in the cause, it need not be physically attached to the bill of exceptions." Code, § 6-912. "Where an acknowledgment of service has been procured as provided in section 6-912, the bill of exceptions may be amended in the reviewing court by making any person a party defendant in error to the case who is bound by such service although such person may not have been named in the bill of exceptions." Code, § 6-913.

In this case the attorneys who represented the members of the board of stewards in the court below acknowledged service of the bill of exceptions, without reservation. The members of the board being thus bound by this acknowledgment, the motion of the plaintiff in error to make them parties defendant in error is one that may be properly entertained. Although in the acknowledgment of service the signature contained only the names of the attorneys, followed by the words, "attorneys for Dawson Methodist Church, defendant in error," this did not amount to a distinct and specific reservation within the meaning of section 6-912, supra, so as to prevent the acknowledgment from binding "all parties whom said counsel represented in the trial court." *Bennett* v. *Wilkes County,* 164 *Ga.* 790 (139 S. E. 566). While in the decision in *Meadows* v. *Simmons,* 155 *Ga.* 834, 837 (118 S. E. 425), there is some language which might seem to be contrary to this view, an examination of the facts of that case will show that there is no actual conflict. The real meaning of that decision was expressed in the statement, "Service of the bill of exceptions on the representative of a class would not bind such members of the class as came in and defended the case in propria persona." The facts of the case being as indicated in this statement, other language in the opinion should be limited accordingly, or be treated as obiter. On the general subject, see *Edwards* v. *Wall,* 153 *Ga.* 776 (5) (113 S. E. 190); *Anderson* v. *Haas,* 160 *Ga.* 420 (2) (128 S. E. 178); *Henderson* v. *Lott,* 163 *Ga.* 326 (136 S. E. 403); *Martin* v. *McAfee,* 31 *Ga. App.* 690 (122 S. E. 71). Accordingly, the amendment to the bill of exceptions is allowed; and the motion to dismiss the writ of error is overruled so far as the question of parties is concerned.

There is no merit in the ground of the motion to dismiss based on the theory that a direct bill of exceptions will not lie to the overruling of a demurrer to an intervention. The movants in this motion were not intervenors in the court below, notwithstanding they so designated themselves in their response to the petition for interpleader. They stated they were appearing "in response to a rule nisi" issued by the judge on the original petition for interpleader, and they became parties defendant to that proceeding. Lassiter as temporary administrator assigned error in his bill of exceptions, not only upon the order overruling his demurrer to the amended answer or cross-action of these defendants, but also upon

the overruling of his demurrer to the petition as amended; and both rulings together constituted basis for a direct bill of exceptions, under the Code, § 6-701. Compare *American Legion* v. *Miller,* 183 *Ga.* 754 (189 S. E. 837). Grounds (c) and (d) of the motion to dismiss relate to the merits of the case as between the movants and the plaintiff in error; and under all the facts of the case they do not show cause for dismissal of the writ of error. The questions raised by these grounds will be dealt with, so far as necessary, later in this opinion.

■ Treating the demurrers as having been filed by Fred L. Lassiter in his capacity as temporary administrator, as they were finally treated by the parties and the court, as shown by the judgment to which Lassiter excepted in such capacity, we approach the question whether the court erred in overruling such demurrers. Since the answer of the stewards of the Methodist Church laid claim to the fund in controversy and the demurrer thereto was overruled, a construction of the will of Miss Talbot would seem to be necessary, regardless of whether the petition of the bank as amended stated a cause of action for the relief of interpleader, or was insufficient for that purpose. Accordingly, we will deal first with that question. "A will shall take effect instantly upon the death of the testator, however long the probate may be postponed." Code, § 113-105. "In the construction of all legacies, the court shall seek diligently for the intention of the testator and give effect to the same as far as it may be consistent with the rules of law; and to this end the court may transpose sentences or clauses, and change connecting conjunctions, or even supply omitted words in cases where the clause as it stands is unintelligible or inoperative, and the proof of intention is clear and unquestionable; but if the clause as it stands may have effect, it will be so construed, however well satisfied the court may be of a different testamentary intention." § 113-806. The law inclines to construe conditions to be subsequent rather than precedent, and favors the holding of estates to be vested rather than contingent, in cases of doubt. §§ 85-902, 85-708; *Cooper* v. *Mitchell Investment Co.,* 133 *Ga.* 765, 775 (66 S. E. 1090, 29 L. R. A. (N. S.) 291). In the will here under consideration the testatrix bequeathed to her brother, Will Talbot, the sum of $10,000, to be paid to him $1000 each year until the entire bequest is paid out, to be held in trust for him by the Bank of Dawson.

Thus far, aside from the trust feature, the bequest was unconditional, and the only question thereafter attached was that it should be claimed by Will Talbot within fourteen years. Whether this should be construed as a condition precedent or as a condition subsequent, the title to the bequest vested in such legatee on compliance therewith; and according to the petition he did comply by claiming the bequest within the time limited. *Parks* v. *Wilkinson,* 134 *Ga.* 14 (67 S. E. 401, 137 Am. St. R. 209). "An estate is vested when there is an immediate right of enjoyment or a present fixed right of future enjoyment." *Lumpkin* v. *Patterson,* 170 *Ga.* 94 (7) (152 S. E. 448). "If futurity be annexed to the *substance* of the gift, the vesting is suspended; but if it relate to the *time of payment* only, the title vests instantly upon the death of the testator." *Cogburn* v. *Ogleby,* 18 *Ga.* 56, 58; *Wells* v. *Ellis,* 184 *Ga.* 645, 646 (192 S. E. 380). There was no futurity attached to the substance of this gift, so as to suspend the vesting, unless it be considered that a condition precedent was to be performed, such as claiming the fund. But even so, when that was done the entire bequest became the property of Will Talbot, and upon his death would go as directed in his will, if he left a will; otherwise to his legal representative for administration according to law.

It appeared that at the time the will was executed this brother of the testatrix was absent, and his whereabouts were unknown. Manifestly it was the desire of the testatrix that he should have this sum; and so positive was this desire that she provided that he might claim it at any time within fourteen years, even allowing this period after probate of the will in solemn form. She did not intend that he should lay repeated claims year by year, but provided simply that he should claim the bequest within the time stated, meaning thereby a single claim. She did direct that the sum should be paid to him in ten annual instalments of $1000 each; but the only condition was that he shall claim "this bequest," not that he should claim the various instalments one by one. The provision in the will, "said bank to make said payments upon the check of the said Will Talbot," was not stated as any kind of condition, but was a mere direction to the bank as to the manner of payment, and, whether valid or invalid, did not affect the vesting. See *Perkins* v. *Citizens & Southern National Bank,* 190 *Ga.* 29 (8 S. E. 2d, 28). The bequest did not amount to an annuity termi-

nable on the death of Will Talbot; and the fact that after his death there could be no "check" signed by him did not prevent the bequest from becoming a part of his estate, but the direction could be complied with by accepting checks signed by his executor or administrator. The petition alleged that Will Talbot was more than seventy years of age at the time of his death, which appears to have occurred during the first part of the year 1940. He was thus about sixty years of age at the time the will was executed. There is nothing to indicate that the testatrix felt that it was impossible for him to live and receive this entire fund in annual instalments of $1000 each; and hence the fact as to his age does not argue that she intended to limit his title to such instalments as accrued during his lifetime. She did not know how soon or how late he might appear and claim the bequest, nor in any view did she provide that the bequest or any part of it should lapse or terminate upon his death, once it had been claimed by him within the time allowed.

Since the title to the bequest vested absolutely in Will Talbot in accordance with the terms and provisions of the will, the Dawson Methodist Church has no claim whatever to this bequest or any part of it in virtue of the will. The court erred in overruling the demurrer to the answer and cross-action filed in its behalf by the members of the board of stewards. Since the members of the board of stewards had no interest in the subject-matter of the controversy, they were not in position to question the validity of the appointment of Lassiter as temporary administrator of the estate of William F. Talbot, or to contest in any manner the claim asserted by him. As will be shown later in this opinion, however, Lassiter as such administrator did have an interest to maintain, provided his appointment was valid; and in this case it was not attacked by any one who might have had the right to do so. Nor, in view of the fact that the members of the board of stewards were entirely without interest in the estate of William F. Talbot, were they entitled to be heard on their prayer as to probate of his will, or as to other matter set forth in their answer or cross-action. Consequently their entire response as amended should have been stricken on the general demurrer of Lassiter as temporary administrator.

Three other claims or possible claims are referred to in the petition. One is the Lassiter claim, which he first asserted as guardian of William F. Talbot, but it is alleged in the petition as

amended that Lassiter "is now the temporary administrator of the estate of William F. Talbot, deceased, and claims said estate." The petition also alleges that "the heirs named in this petition are claiming said estate." This refers to Misses Carlton and Kilpatrick, and M. C. Cummings, who were otherwise mentioned in the petition as the "blood kin" of Talbot. The third claim, or possible claim, is that of J. H. Fletcher, as to whom the petition makes these averments, and these only: "The petitioner shows that it has been reported to it that in William F. Talbot's lifetime he made, executed, and declared a will bequeathing to the Hon. J. H. Fletcher, ordinary of Terrell County, Georgia, his property. That he will probably claim said ƒund under the will made by William F. Talbot." It will be noticed that all of these claims or possible claims would treat the bequest as belonging to the estate of William F. Talbot, deceased, and to this extent they are consistent with the ruling which we have just made as to the meaning of the will of Miss Susie J. Talbot. They are based on the theory that the whole bequest became the property of William F. Talbot, is now a part of his estate, and does not go the Methodist Church. We will now discuss these several claims, though in a different order from that in which they have just been stated. The bank could not properly pay this fund to the heirs at law, because the right of action would be in the legal representative of William F. Talbot, either an executor or an administrator. *Brown* v. *Mutual Life Insurance Co.*, 146 *Ga.* 123 (90 S. E. 856)'; *Jones* v. *Gann*, 184 *Ga.* 722 (193 S. E. 174) ; *Hill* v. *Maffett*, 3 *Ga. App.* 89 (59 S. E. 325). Furthermore, it is alleged only that they are "claiming said estate," not that they are making claim against the bank. For aught that appears they may be claiming the estate against the temporary administrator, and may never trouble the bank. Concerning the claim of Fletcher, it may be said that he would have no right as against the bank until the will of Talbot is probated, and it is not alleged in the bank's petition that such a will is even in existence. But even assuming that Fletcher "will probably claim said funds," the petition, as in case of the heirs, fails to show. that Fletcher is now asserting or will assert any claim against the bank; but, so far as appears, he may be satisfied to allow payment to Lassiter as temporary administrator, subject to the liability of the latter to account to the proper person or authority after probate of the will.

Now, as to the Lassiter claim. "The ordinary may at any time grant temporary letters of administration upon any unrepresented estate, for the purpose of collecting and taking care of the effects of the deceased, to continue and have effect until permanent letters are granted; and from the order granting temporary letters there shall be no appeal." Code, § 113-1207. Any such person so appointed shall give "good and sufficient bond, with security, for double the amount of all the personal property belonging to the estate, other than real estate." § 113-1221. "A temporary administrator may sue for the collection of debts or for personal property of the intestate. If a permanent administrator shall be appointed pending the action, he may be made a party in lieu of the temporary administrator." § 113-1511. See *Irvine* v. *Wiley,* 145 *Ga.* 867 (2) (90 S. E. 69). Accordingly Lassiter, as temporary administrator of William F. Talbot, was authorized to collect and to take care of the fund, in accordance with his bond, "until permanent letters are granted" either to an executor or to a permanent administrator; and so it was the duty of the bank to pay the fund over to him. This duty or liability on the part of the bank would require immediate payment of the entire fund, not payment of mere instalments. This is true for the reason that the entire bequest vested in fee simple in Talbot the moment he laid claim thereto in accordance with the will, no valid trust having been created. "In an executed trust for the benefit of a person capable of taking and managing property in his own right, the legal title is merged immediately into the equitable interest, and the perfect title vests in the beneficiary according to the terms and limitations of the trust." Code, § 108-112. "In this State a trust estate can not be created in property for the benefit of a person sui juris." *Armour Fertilizer Works* v. *Lacy,* 146 *Ga.* 196 (2) (91 S. E. 12). See also *Gray* v. *Obear,* 54 *Ga.* 231; *Terrell* v. *Huff,* 108 *Ga.* 655, 659 (34 S. E. 355) ; *Clark* v. *Baker,* 186 *Ga.* 65 (196 S. E. 750). "Conditions repugnant to the estate granted or to do impossible or illegal acts, or which in themselves are contrary to the policy of the law, are void." Code, § 85-903. See also *Stamey* v. *McGinnis,* 145 *Ga.* 226 (88 S. E. 935). Under these well defined principles of law, the provision of the will of Susie J. Talbot which purported to defer payment after the absolute vesting of the bequest was void, and amounted to no direction whatever as to time

or manner of payment. Consequently, the entire sum was payable to Lassiter, as temporary administrator.

In view of the foregoing analysis of the several claims, what should now be said as to the sufficiency of the petition as a suit for the equitable relief of interpleader? The petition can not be sustained as a proceeding "in the nature of an interpleader," since it does not claim any affirmative relief as to an interest claimed by the petitioner. *Phillips* v. *Kelly,* 176 *Ga.* 111 (3) (167 S. E. 281). The bank alleges that it is wholly without interest, and is asking for relief merely as a stakeholder; and it seeks a decree requiring all claimants to interplead. This is the substance of all of the relief which it seeks, except for injunction to restrain the defendants from pressing any demand otherwise than in this case. The Code declares: "Whenever a person shall be possessed of property or funds, or owe a debt or duty, to which more than one person shall lay claim of such a character as to render it doubtful or dangerous for the holder to act, he may apply to equity to compel the claimants to interplead." § 37-1503. The proper construction of this section is that the claims must be of such character as to justify a reasonable doubt or reasonable apprehension of danger. In *Davis* v. *Davis,* 96 *Ga.* 136 (2) (21 S. E. 1002), it was held that indifference or lack of interest on the part of the stakeholder is not sufficient. There must also be at least two conflicting claims which are "apparently well founded." In such cases it is necessary that the "claims be set forth so as to inform the court of their nature, character and foundation, at least to the extent of enabling it to determine whether or not an interpleader is essential to the plaintiff's protection." Code, § 3235; 11 Am. & Eng. Enc. Law, 502; Story's Eq. Pl. (10th ed.) § 292; Mitford & Tyler, Eq. Pl. & Pr. 235, 236; *National Bank of Augusta* v. *Augusta Cotton & Compress Co.,* 99 *Ga.* 286 (2) (25 S. E. 686). A stakeholder is not entitled to protection by a court of equity to the extent of being saved from all shadow of risk; and so where *he is in possession of all the facts* and there is no question of law which is reasonably debatable, his petition for interpleader should be denied. *Franklin* v. *Southern Railway Co.,* 119 *Ga.* 855 (47 S. E. 344). To the same effect see *Knight* v. *Jackson,* 156 *Ga.* 165 (118 S. E. 661); *Johnson* v. *Harbison-Walker Mining Co.,* 181 *Ga.* 630 (183 S. E. 791); *Daniel* v. *Citizens & Southern National Bank,* 182 *Ga.* 384

(4) (185 S. E. 696). In the present case there is no claim that the plaintiff is not in possession of all the facts; and so far as the questions of law are concerned, they could not be reasonably doubtful or debatable, in view of the provisions of the Code and previous decisions by this court.

Several decisions have been cited by counsel for the bank and for other parties, for the purpose of sustaining the proposition that the petition here is maintainable, at least to avoid a multiplicity of actions; and we are requested to review and overrule some of the decisions which we have just cited in support of the proposition that such a suit is not maintainable unless there is reasonable doubt or danger. We think the decisions are in unison in recognizing such prerequisites, and to this extent they are all consistent with the principle as stated in the Code. Whether or not the principle has been correctly applied in all the cases, we think there is no precedent which would require a different conclusion in the present case; and therefore the request to review and overrule is denied. The petition as amended showed a clear liability and duty on the part of the bank to pay the fund to Lassiter as temporary administrator; and consequently it did not state a cause of action to compel the several claimants to interplead. The court erred in overruling the general demurrer to the petition. The case differs somewhat from suits for direction, brought by representatives of estates, under the Code, § 37-404.

*Judgment reversed. All the Justices concur.*