CANNON *v.* WILLIAMS, administratrix, *et al.*

No. 14237.   SEPTEMBER 21, 1942.

ADHERED TO ON REHEARING, NOVEMBER 10, 1942.

810

*Erwin & Nix* and *Thad L. Bynum,* for plaintiff in error.

*James W. Arnold, Rupert A. Brown,* and *Preston Almand,* contra.

JENKINS, Justice.  ■  "Whenever a person shall be possessed of property or funds, or owe a debt or duty, to which more than one person shall lay claim of such a character as to render it doubtful or dangerous for the holder to act, he may apply to equity to compel the claimants to interplead." Code, § 37-1503. If the holder knows all the facts, and the questions of law, under repeated decisions of the courts, are not intricate or debatable, such a petition will not lie (*Lassiter* v. *Bank of Dawson,* 191 *Ga.* 208, 11 S. E. 2d, 910) ; but it is not incumbent upon the holder "to decide at

his peril either close questions of fact, or nice questions of law;" and in such a case he may require the parties at interest to set up their claims for determination. *Knight* v. *Jackson*, 156 *Ga.* 165, 168 (118 S. E. 661) ; *Franklin* v. *Southern Ry. Co.*, 119 *Ga.* 855 (47 S. E. 344). This petition by a decedent's brother, to require the widow as administratrix of the estate and the decedent's son-in-law to set up their claims to a fund which was held by the petitioner for the decedent, and which the son-in-law claimed under an alleged gift causa mortis, but the validity of which alleged gift was disputed by the administratrix, showed conflicting claims of such doubt as to render proper the petition for interpleader; and the court did not err in overruling the demurrer by the administratrix. The overruling of this demurrer, which was to the effect that the petition did not show conflicting claims of such character as to render it doubtful or dangerous for the petitioner to act, did not establish the law of the case in favor of the son-in-law's claim, so as to render erroneous for that reason the direction of a verdict in favor of the administratrix; but the effect of such ruling was merely to adjudicate the right of the stakeholder to maintain his petition for interpleader.

"To constitute a valid gift, there shall be the intention to give by the donor, acceptance by the donee, and delivery of the article given or some act accepted by the law in lieu thereof." Code, § 48-101.

The necessary "intention to give by the donor" means his intention to make a present gift of the property, that is to transfer some present immediate interest, as distinguished from a mere intention to give in the future, or from a gift testamentary in character. *Bowen* v. *Holland*, 182 *Ga.* 430 (2) (185 S. E. 720) ; *Mims* v. *Ross*, 42 *Ga.* 121; *Culpepper* v. *Culpepper*, 18 *Ga. App.* 182 (5) (89 S. E. 161) ; Moore *v.* Tiller (5th C. C. A.), 61 Fed. 2d, 478; 24 Am. Jur. 736, 738-740, §§ 13, 14, 21, and cit.

"Acceptance by the donee" imports an actual acquiescence on his part, except that "if the donation shall be of substantial benefit, the law will presume the acceptance, unless the contrary shall be shown." Code, § 48-102.

Except where the gift shall be evidenced by a written instrument which is itself delivered, the delivery required as to the article given may be either actual or constructive; and "Any act

which shall indicate a renunciation of dominion by the donor, and the transfer of dominion to the donee, shall be a constructive delivery." Code, § 48-103. Where, however, the gift is evidenced in writing, an actual delivery of the property itself is not required, since the delivery of the writing dispenses with the delivery of the property, provided the writing is based upon a good consideration. *Wyche* v. *Greene,* 11 *Ga.* 159 (14), 177; *Burney* v. *Ball,* 24 *Ga.* 505 (3), 514; *Jackson* v. *Gallagher,* 128 *Ga.* 321, 329 (57 S. E. 750); *Burt* v. *Andrews,* 112 *Ga.* 465, 467 (37 S. E. 726); *Trustees of Jesse Parker Williams Hospital* v. *Nisbet,* 189 *Ga.* 807 (*c*), 814 (7 S. E. 2d, 737); *Young* v. *Locknit,* 64 *Ga. App.* 438 (13 S. E. 2d, 525); Code, § 48-104; note in 63 A. L. R. 537, 558-560. If the gift in writing be not based upon a good consideration, it is a nudum pactum, and, in the absence of actual delivery of the property itself, remains ineffective.

■ A good consideration is one founded either on love and affection toward one to whom a natural duty exists, such as near relatives by either consanguinity or affinity; or it may be based on a strong moral obligation supported either by some antecedent legal obligation, though unenforceable at the time, or by some present equitable duty. *Davis* v. *Morgan,* 117 *Ga.* 504, 506, 507 (43 S. E. 732, 61 L. R. A. 148, 97 Am. St. R. 171); *Gray* v. *Hamil,* 82 *Ga.* 375, 385 (10 S. E. 205, 6 L. R. A. 72); *Monroe* v. *Martin,* 137 *Ga.* 262, 263 (73 S. E. 341); *McElven* v. *Sloan,* 56 *Ga.* 208; *Worth* v. *Daniel,* 1 *Ga. App.* 15 (2), 17 (57 S. E. 898); *McCowen* v. *McCord,* 49 *Ga. App.* 358 (2) (175 S. E. 593); Code, § 20-303; *Berry* v. *Berry,* 83 W. Va. 763 (99 S. E. 79); *Sapp* v. *Lifrand,* 44 Ariz. 321 (36 Pac. 2d, 794, 796); 17 C. J. S. 438, § 91; 16 Am. Jur. 475, 476, § 61, and cit.; 18 Words & Phrases, 472.

■ "A gift in contemplation of death (donatio causa mortis) must be made by a person during his last illness or in peril of death, must be intended to be absolute only in the event of death, and must be perfected by either actual or symbolical delivery. Such a gift, so evidenced, may be made of any personal property and proved by one or more witnesses." Code, § 48-201. The chief distinction between a gift inter vivos and a gift causa mortis is that a gift causa mortis, while immediately passing a revocable, contingent interest, must be intended to pass the absolute title only in the event of death. As a consequence, it is the general rule that

a gift causa mortis may be revoked at any time during life at the option of the donor; and his recovery from the particular illness or escape from the peril, in contemplation of which the gift was made, will of itself operate as a revocation. 24 Am. Jur. 761, § 61, and cit.

The rules governing intention by the donor to give, acceptance by the donee, and requiring or dispensing with delivery of a writing passing title in lieu of delivery of the property, apply alike to either class of gift. *Burt* v. *Andrews,* 112 *Ga.* 466 (supra); Southern Industrial Institute *v.* Marsh (5th C. C. A.), 15 Fed. 2d, 347, 349 (4, 5); Moore *v.* Tiller (5th C. C. A.), 61 Fed. 2d, 478, 479; 24 Am. Jur. 738, 742, 748, 753, §§ 21, 24, 30, 31, 40.

In Basket *v.* Haskell, 107 U. S. 602, 615 (2 Sup. Ct. 415, 27 L. ed. 500), on which the administratrix especially relies, the owner of a certificate of deposit in a bank delivered to the alleged donee himself the certificate accompanied by a signed writing, "Pay to [the donee] not until my death." However, there was no acceptance by the bank of this assignment before the death of the donor; and since the technical rule governing checks, drafts, and assignments of funds on deposit with third persons is in some cases different from that governing the transfer of ordinary personalty, the United States Supreme Court held that the transaction was in effect no more than "a check upon the bank against the deposit, which, as is shown by all the authorities, . . can not be valid as a donatio causa mortis, even where it is payable in præsenti, unless paid or accepted while the donor is alive." But it was there expressly recognized that "if the banker accepts the check, or otherwise subjects himself to liability as trustee, prior to the death of the donor, the gift is complete and valid." This distinction, in case of an *acceptance* by the holder of the fund, was noted and discussed in Smith *v.* Eshelman, 235 Ala. 588 (180 So. 313, 316). In the instant case, the assignment can not be taken as invalid under the rule stated, since the writing was not delivered to the donee, as in the Basket decision, but to the holder of the fund himself, who by his receipt and retention of the writing accepted such assignment.

In either a gift inter vivos or a gift causa mortis, although "a delivery . . to a third person as the agent of the *donor* is

not sufficient," yet "a delivery to a third person in trust and for the benefit of the *donee*" will suffice; and in a gift causa mortis, "such delivery will be sufficient though the donor dies before the donee actually receives" the gift from the trustee. *Sorrells* v. *Collins,* 110 *Ga.* 518, 521 (36 S. E. 74); 24 Am. Jur. 747, 748, § 30, and cit. "The person to whom delivery is thus made will be presumed, in the absence of controverting circumstances, to take the property as the trustee of the intended donee, and not merely as the agent of the donor." Devol v. Dye, 123 Ind. 321 (24 N. E. 246, 7 L. R. A. 439, 441); Smith v. Eshelman, supra; In re White's Estate (Wash.), 225 Pac. 415, 417; Varley v. Sims, 100 Minn. 331 (111 N. W. 269, 8 L. R. A. (N. S.) 828, 830, 117 Am. St. R. 694); notes in 60 A. L. R. 1059, 3 A. L. R. 922, 926, and cit.; 28 C. J. 694, § 109.

There appears to be considerable conflict of authority as to whether the title in a gift causa mortis or merely a contingent revocable interest vests immediately upon delivery, subject to be defeated by a recovery from the illness or by a revocation of the gift; but the decisions with unanimity agree, that, even though the donee's title may remain inchoate without even conditionally vesting until the death of the donor, title vests in the donee upon the donor's death, subject only to defeat by reason of a deficiency of assets necessary to pay the debts of the deceased donor. Basket v. Haskell, 107 U. S. 609, 610, 616 (supra); Mitchell v. Pease, 61 Mass. (7 Cush.) 350, 353; 24 Am. Jur. 755, 756 (§§ 46, 47). Although a gift causa mortis has been likened to a legacy, in that it is also "ambulatory and conditional," revocable until death, and contingently subject to the decedent's debts (Kiff v. Weaver, 94 N. C. 274, 55 Am. R. 601, 606), it nevertheless differs from a legacy, not only because such a gift must transfer some present title or interest, as distinguished from a gift testamentary in character, but because "no title whatever in [the] chattel descends to the executor or administrator" merely because of the decedent's death. The administrator "has no right to the possession of it" for the purpose of administration, and it is "not subject to any of the incidents of administration," save that the administrator may upon a proper showing cause the donee to account for the value of the chattel, provided there is no other sufficient estate to satisfy creditors. Michener v. Dale, 23 Pa. St. 59, 63, 64; Emery v. Clough, 63

N. H. 552 (4 Atl. 796, 56 Am. R. 543, 545), and cit.; Pierce *v.* Boston Savings Bank, 129 Mass. 425 (37 Am. R. 371, 374); 24 Am. Jur. 736, and cit. Even in such an event, "any residuum that may be left after payment of the donor's debts belongs to the donee, and not to the donor's estate." *Wade* v. *Edwards,* 23 *Ga. App.* 677, 682 (99 S. E. 160); Kiff *v.* Weaver, supra, and cit. It follows from what has been said that the mere existence of creditors will not avoid a gift if they can be paid from other assets, and that a gift causa mortis can not be defeated, provided the donor "retains enough to satisfy all subsisting claims against him," and commits no fraud against his creditors. Virgin *v.* Gaither, 42 Ill. 39, 40.

It will thus be seen that, under the general rule, the burden of proving an insufficiency of assets to pay outstanding debts of the estate falls on the administrator, who does not take title to the property upon the death of the donor. Seybold *v.* Grand Forks National Bank, 5 N. Dak. 460 (67 N. W. 682).

Under the pleadings and the proof in the instant case, it was error to direct the verdict in favor of the administratrix, for two reasons:

■ The administratrix, in pleading a right "to have and administer" the amount of the alleged gift "in the payment of debts due by her intestate," in no wise set up any deficiency of other assets to satisfy such obligations, but stated as the only basis of this right that such money "belonged to [decedent] at the time of his death, and is an asset belonging to his estate," and that he had died "without having disposed of the same in any manner, by will or otherwise." The gist of this pleading, therefore, was, not that the gift was nullified by any lack of sufficient assets to pay debts, but that the title had remained in the decedent and passed to the administratrix because there had been no valid gift and no will.

■ Even if the pleadings could be construed otherwise, so as to mean that it was necessary to recover the fund given, in order to pay debts of the estate, the only proof relating to debts and assets was that by the brother of the decedent, who was the petitioner, and his testimony failed to show that there would be a deficiency of assets, or that it would be necessary to use any portion of the $3091.93, constituting the alleged gift. His testimony was limited to statements that the amount of such alleged gift "is all the estate he had *down there;*" that "I *don't know of* any other estate that he

had;" and that it is "true *as far as I know* . . he did not leave any estate," and "he owed plenty of debts." This testimony lacked the necessary positiveness and definiteness to show either the absence of other assets or a deficiency for the payment of debts. Nor did it appear, under the pleadings or the evidence, as to how much of the alleged gift would be necessary to pay creditors.

■ Applying the foregoing rules of law to the facts of the instant case, the alleged gift by the decedent, just before his death after an operation, to his son-in-law, by a signed letter delivered to the decedent's brother, a cotton broker, directing the brother "in case of death" of the decedent to turn over to the son-in-law "any balance" with the brother, except the profits from certain described cotton belonging to the decedent's wife, was a valid gift causa mortis; and in the contest for this fund between the son-in-law and the administratrix, under the bill of interpleader filed by the brother, it was error to direct the verdict for the administratrix. According to the undisputed evidence, the decedent at the time the written gift was made had in the keeping of his brother the specific sum of $3091.93, which fund has remained in the hands of the brother. The direction in the letter that "any open business . . be closed out on first market day after my death" did not and could not have had any reference to the definite, specific sum of money which the brother held for the decedent at the time the gift was made; and consequently such direction does not negative the donor's intention to relinquish his present interest in .the fund, subject only to impending death. The expression in the writing transferring title to the trustee of the donee, which made the gift conditional on the donor's death, and which is but an expressed statement of this essential element of a gift causa mortis as distinguished from a gift inter vivos, did not render the writing testamentary in character. As was said by the Supreme Court of Alabama in Smith *v.* Eshelman, supra: "Such a gift . . is revoked by law if [the donor] gets well of the sickness with which he was then afflicted. But the revocable nature of the gift may as well be expressed as implied. . . So . . that a gift is made expressly to depend for its complete effectiveness upon such a failure to revoke expressly or by implication of law not only does not detract from it as such a gift, but that is only an expression of the existence of a quality of a gift causa mortis as defined by law."

Whether express or not, such a condition is always implied under the very definition of a gift causa mortis, as generally recognized and as expressed in the Georgia Code, § 48-201.

Since the subject-matter of the gift was a chose in action, already in the hands of the brother, any delivery to him other than by a writing was impossible or impracticable. Not only was there a writing actually delivered to the brother, but the delivery to him in trust for the donee, who was a resident of a distant city, just before the decedent went to the hospital and the brother according to his plan was about to leave the city, was as valid a delivery as if it had been made directly to the donee. It thus appears that, even if the rule recognized in some jurisdictions, that an informal writing such as a letter or memorandum will not of itself pass title unless a manual delivery of the property itself is impossible or impracticable (24 Am. Jur. 751, § 36, and cit.), were applicable, which rule, though recognized in one Georgia case (*Singleton* v. *Colton*, 23 *Ga.* 261 (3), 266), seems out of line with other cited previous and subsequent decisions by this court, the result, even under such a rule, would nevertheless be the same, since a manual delivery of the chose in action to the son-in-law through the brother was otherwise impracticable.

With respect to debts of the estate, if, on a retrial of this case, the administratrix shall determine and shall allege and prove that there is a deficiency of other assets necessary to pay such debts, and what that deficiency is, she would be entitled to recover for the benefit of creditors so much of the amount of the gift as might be necessary, less such credit as the donee might be legally entitled to receive by virtue of his claim against the estate. However, if on a retrial of this case the administratrix is unable to determine and to allege and prove the amount of debts, that question may be held in abeyance, without any judgment of the trial court, sustaining the validity of the gift, operating as res judicata against the administratrix as to any future right to receive payment of the necessary amount under the rules stated.

*Judgment reversed. All the Justices concur.*