JACKSON *et al.* v. JACKSON *et al.*

No. 16897. JANUARY 13, 1950. REHEARING DENIED FEBRUARY 17, 1950.

*Jule & A. C. Felton III*, for plaintiffs in error.

*Culpepper & Culpepper*, contra.

WYATT, Justice. ■ The first question presented is whether or not the general demurrer to the petition was properly overruled. The Code provides: "Equity will not interfere with regular administration of estates, except upon the application of the representative, either, first for construction and direction, second for marshaling the assets; or upon application of any person interested in the estate where there is danger of loss or other injury to his interests." Code, § 37-403. Section 113-2203 provides: "A court of equity shall have concurrent jurisdiction with the ordinary over the settlement of accounts of administrators." Section 37-122 provides: "Where law and equity have concurrent jurisdiction, whichever first takes jurisdiction shall retain it, unless a good reason shall be given for the interference of equity." As was pointed out in *Hoffman v. Chester*, 204 *Ga.* 296-304 (49 S. E. 2d, 760), confusion has arisen over the application of these Code sections.

If the petition in this case can be maintained, it, of course, must be under the provision of the last clause of Code § 37-403. The plaintiffs in the court below must qualify as persons "interested in the estate." The wife of the deceased meets this requirement by alleging that the executor refuses to give her any information concerning the money or property belonging to the estate, which information she must have in order to determine the question whether or not to accept the bequest contained in the will in lieu of dower and a year's support for herself and minor children. The minor children, who were plaintiffs in the court below, are persons "interested in the estate" for the reason that, under the terms of the will, they participate in the residue of the estate after specific bequests have been satisfied; and this has been done as to all persons provided for in the will with the exception of the plaintiffs in the court below. The petitioners in the court below are persons "interested in the estate."

The next question is: Was there danger of loss or other injury to their interest? The petition alleges that Sam Jackson Jr. and Henry Jackson, who received a portion of the $11,050.58 withdrawn by Mary Ella Kendrick from the Citizens Trust Company, are both insolvent. The petition alleged "that neither

Handy Jackson nor Mary Ella Kendrick are insolvent, but that they are of limited means and do not have assets in the amount equal to the amount set out in this petition." It was alleged that the executor had disposed of the personalty bequeathed to two of the plaintiffs, was actively cutting and removing the timber from the land belonging to the estate, and had advised the plaintiffs of his intention of removing all timber from the land; that he and the other defendants had divided among themselves $11,050.58 belonging to the estate; and that the executor was, by the will, relieved from giving any bond, and was therefore not under bond. These allegations, reasonably construed, show that the petitioners have an interest in the estate of the deceased and a right to share therein, danger of loss, and inability to protect such right by ordinary legal methods of procedure.

True it is that an executor, although relieved of giving bond by the terms of a will, may, nevertheless, upon a proper showing, be required to give bond. *Powell* v. *Smith,* 178 *Ga.* 737 (174 S. E. 341). Under the allegations of the petition in this case, this procedure does not adequately protect the interest of the plaintiffs for the reason alleged, that the executor had disposed of personal property, converted property to his own use and to the use of the other defendants, and was then cutting and removing valuable timber from the property. Under these allegations, the plaintiffs were entitled to prompt relief. See *Crawford* v. *Crawford,* 139 *Ga.* 535 (77 S. E. 826) ; *Spooner* v. *Bank of Donalsonville,* 159 *Ga.* 295 (125 S. E. 456) ; *Jones* v. *Proctor,* 195 *Ga.* 607 (24 S. E. 2d, 779) ; *McCord* v. *Walton,* 192 *Ga.* 279 (14 S. E. 2d, 723). It was not error to overrule the demurrer to the petition.

■ We now consider the general grounds of the motion for new trial. The sole question submitted to the jury was whether or not the sum of $11,050.58 on deposit in the Citizens Trust Company of Atlanta, Georgia, in the name of Mary Ella Kendrick at the time of the death of Sam Jackson was the property of Sam Jackson at his death. The jury found the deposit to be the property of Sam Jackson at the time of his death.

This money was deposited several months before the death of Sam Jackson. At the time the deposit was made, he and Mary

Ella Kendrick were both present in the bank. The amount originally deposited was something over $12,000. On the date of the deposit, Sam Jackson withdrew from his account on deposit with the bank a similar amount of money. The money was actually deposited by Mary Ella Kendrick, but Sam Jackson was present. No one other than Mary Ella Kendrick was authorized to withdraw the money from the bank, but she did have that right, the money having been deposited unconditionally in her name.

Prior to the death of Sam Jackson, two withdrawals from the account were made by checks signed by Mary Ella Kendrick. She is the sister of Sam Jackson. Whether the account was a savings account or a commercial checking account is not clear from the evidence. The president of Citizens Trust Company inferred in his testimony that the account was a savings account by testifying: "These checks were made payable to cash. Presumptively, she got the cash on those checks. A savings customer has a right to make a withdrawal. I mean in cash." He was in this testimony referring to checks by virtue of which Mary Ella Kendrick withdrew the $11,050.58 from the bank after the death of Sam Jackson. The evidence did disclose that no money at any time was withdrawn from the account except by check signed by Mary Ella Kendrick. It is not at all clear from the evidence whether the account was a savings account or a commercial checking account.

There was testimony to the effect that Sam Jackson, after the money was deposited to the credit of Mary Ella Kendrick, several times made the statement that he had given this money to his sister; that he deposited the money to her credit; and that it was her money. The evidence disclosed no other statements made by him in contradiction of these statements.

"To constitute a valid gift, there shall be the intention to give by the donor, acceptance by the donee, and delivery of the article given or some act accepted by the law in lieu thereof." Code, § 48-101. "If the donation shall be of substantial benefit, the law will presume the acceptance, unless the contrary shall be shown." § 48-102. "Actual manual delivery shall not be essential to the validity of a gift. Any act which shall indicate a renunciation of dominion by the donor, and the transfer of

dominion to the donee, shall be a constructive delivery." § 48-103.

This being a transaction between brother and sister, the presumption is in favor of a gift. § 108-116. A very fine discussion of this question and a collection of the authorities will be found in *Clark* v. *Bridges,* 163 *Ga.* 542 (136 S. E. 444). "Where a deposit-book issued by a savings bank is delivered with appropriate words of gift by the depositor, with the intention to give to the person to whom it is delivered the deposits entered in the book, this is sufficient to constitute a valid gift of the deposits, without assignment or transfer in writing." *Wade* v. *Edwards,* 23 *Ga. App.* 677 (99 S. E. 160).

The facts stated in the first part of this division of this opinion, applied to the above rules of law, not only raise a presumption of a gift by Sam Jackson to his sister Mary Ella Kendrick of the $11,050.58 in question, but furnish all the facts essential to establish a gift.

The only evidence in the record relied upon to disprove the fact of a gift is that, on one occasion before the death of Sam Jackson, Mary Ella Kendrick drew a check on the account that was endorsed by Sam Jackson, and he used the proceeds of this check to buy a farm, title to which was taken in his name. If the money was hers—and it was under the above testimony— she had a right to give any part of it back to her brother; and the fact that she did so, did in no way disprove the original gift. After Sam Jackson died, Mary Ella Kendrick withdrew the balance of the account and gave it to a son of Sam Jackson. This she also had a right to do, and the fact that she did, in no way is contradictory to the original gift.

The only other evidence relied upon to disprove the gift was contradictory statements made by Mary Ella Kendrick after the death of Sam Jackson—such as, that she never had the bank book, did not know that he had given her the money, that she never had a bank account in Atlanta, and statements of similar import. It appears that these statements were made by an old, illiterate, uneducated woman after she had been taken into custody by the sheriff of the county and a representative of the G. B. I. from Atlanta. Just what she was accused of, or exactly why she should have been arrested, does not appear from the

record, but she was arrested and carried to the sheriff's office and interrogated, when and where, it was testified by the officers, she made these conflicting statements. She testified that she had never been in jail and was "afraid of that jail" and she did not remember what she said. Most of these alleged contradictory statements were proven not to be true by the officers and employees of the bank.

We do not think that these unsupported contradictory statements are sufficient to carry the burden of establishing that the transaction was not a gift, and particularly so under the circumstances, by virtue of which these statements were obtained.

■ The first ground of the amendment to the motion for new trial complains because one of the attorneys for the plaintiffs in the court below was permitted, over objection, to testify to a transaction with the deceased, and that this should not have been allowed for the reason that the fee of the attorney was contingent. Nothing appears in the record about whether or not the fee was contingent. Of course, this court cannot consider this contention.

■ The second ground of the amendment to the motion for new trial complains because it is alleged that the trial court did not properly charge the jury as to the burden of proof. We do not consider the charge, taken as a whole, subject to this criticism.

From what has been said in division 2 of this opinion, it follows that the denial of the motion for new trial was error.

*Judgment reversed. All the Justices concur.*