19069. MORRIS *v.* FULTON COUNTY FEDERAL SAVINGS & LOAN ASSOCIATION *et al.*

PER CURIAM. The petition for interpleader, brought by Fulton County Federal Savings & Loan Association, alleged: that the plaintiff held a savings account in a stated amount in the name of Mrs. E. C. Wallace, who died November 20, 1954; that, after her death, the defendant Gussie Lou Morris, alleging herself to be a sister of the decedent, notified the plaintiff that the depositor had made to her a gift causa mortis of the deposit book issued by it to the depositor and the savings account evidenced by the deposit book, and thereafter brought suit against the plaintiff, in the Civil Court of Fulton County, to recover the amount of the deposit, which remained on its books in the name of the original depositor; that the defendant James P. Swann was duly appointed the administrator of the estate of Mrs. Wallace, the depositor, and had notified the plaintiff that no valid gift or transfer of the deposit had been made to the defendant Morris, but that the deposit constituted a part of the estate of the deceased depositor, and demanded payment thereof to him as such temporary administrator. *Held:*

In view of the possession by the defendant Morris of the deposit book issued by the plaintiff to the decedent, the decision of this court in *Jackson* v. *Jackson,* 206 *Ga.* 470, 476 (57 S. E. 2d 602), and the act of the General Assembly approved February 15, 1952 (Ga. L. 1952, p. 305, § 4; Code, Ann. Supp., § 16-439)—the conflicting claims of the defendants to the funds in the possession of the plaintiff are of such character as to render proper the bill of interpleader filed by the plaintiff, and the trial judge did not err in denying the motion to dismiss the same, or in thereafter ordering the defendants to interplead therein, and in enjoining the plaintiff in error from prosecuting the suit in the Civil Court of Fulton County. Code (Ann. Supp.) § 37-1503; *Cannon* v. *Williams,* 194 *Ga.* 808 (22 S. E. 2d 838), and cases there cited.

*Judgment affirmed. All the Justices concur, except Head, J., who dissents.*

ARGUED SEPTEMBER 16, 1955—DECIDED OCTOBER 13, 1955.

*Wm. F. Buchanan, Newell Edenfield, Lamar W. Sizemore,* for plaintiff in error.

*R. W. Crenshaw, Jr., Claude E. Hambrick, Crenshaw, Hansell, Ware & Brandon,* contra.

HEAD, Justice, dissenting. The court in its opinion cites *Jackson* v. *Jackson,* 206 *Ga.* 470, 476, and the act of the General Assembly approved February 15, 1952 (Ga. L. 1952, p. 305,

§ 4; Code, Ann. Supp., § 16-439), as authority to sustain the interpleader filed by the petitioner. The *Jackson* case was before this court on three separate occasions. No ruling in any of the three opinions rendered sustains the proposition that the conflicting claims in the present case between the temporary administrator and the alleged donee of a gift causa mortis are "of such a character as to render it doubtful or dangerous for the holder to act." Code § 37-1503.

In the first opinion in *Jackson* v. *Jackson*, supra, written by Mr. Presiding Justice Wyatt for the court, it appears from the facts of the case that a dispute arose between the heirs of Sam Jackson and Mary Ella Kendrick, his sister. A sum of money had been deposited in a savings account by Mary Ella Kendrick. Sam Jackson had been present when the deposit was made, and had withdrawn a similar amount of money from the bank on the same date. The heirs of Sam Jackson contended that the money on deposit in the name of Mary Ella Kendrick was the money of Sam Jackson. The defendant contended that it was a gift to her and was her money. In division 2 of the opinion it was said: "No one other than Mary Ella Kendrick was authorized to withdraw the money from the bank, but she did have that right, the money having been deposited unconditonally in her name." The judgment denying Mary Ella Kendrick's motion for new trial was reversed in a full-bench decision.

It is true that, in ruling on the question of whether or not the deposit of the money in the bank was sufficient to constitute a gift to Mary Ella Kendrick by her brother, Sam Jackson, a headnote is quoted from *Wade* v. *Edwards*, 23 *Ga. App.* 677 (99 S. E. 160), relating to the possession of a deposit book issued by a savings bank. The court in the *Jackson* case did not have before it any question involving the rights of a person in possession of a savings-bank book where the funds were on deposit in the records of the bank in the name of another. The mere quotation by this court from the case of *Wade* v. *Edwards*, supra, did not confuse the law. This is especially true under the rulings made on the second appearance of the case. *Jackson* v. *Jackson*, 209 *Ga.* 85 (70 S. E. 2d 592). The jury again had found against Mary Ella Kendrick, and this court (at page 88) said: "When this case was previously before this court . . . it was there held that the

evidence was insufficient to support the verdict," and there being "no substantial difference in the evidence from that adduced upon the former trial," the judgment was reversed. In the opinion, with reference to the contention of the plaintiffs that additional evidence had been presented, it was said: *"We cannot see that the possession of the savings pass book by Sam Jackson, or the fact of the custom in the banking business not to permit withdrawals except upon presentation of the pass book, is the addition of any substantial fact to the record previously before this court."* (Italics supplied.) While there were three dissents in its second appearance, the full court concurred in a judgment sustaining the rulings in the two previous appearances before the court in *Jackson* v. *Jackson,* 210 *Ga.* 643 (81 S. E. 2d 795), and the decision of the judge, sitting as court and jury, finding in favor of Mary Ella Kendrick, was unanimously sustained.

The effect of the three decisions of this court in the *Jackson* cases, supra, was to disregard the language in the decision of the Court of Appeals in *Wade* v. *Edwards,* supra, quoted in the first *Jackson* case. This decision of the Court of Appeals was rendered at the March term, 1919, prior to the amendment to our banking law approved August 16, 1919 (Ga. L. 1919, p. 210; Code § 13-2047), which provides that savings deposits "shall be repaid to the depositors, respectively, or to their legal representatives." The decision in *Wade* v. *Edwards,* supra, was likewise rendered prior to our Negotiable Instruments Law of 1924, which provides as follows: "An instrument to be negotiable must conform to the following requirements: (1) It must be in writing, and signed by the maker or drawer." Code § 14-201. See *McIntire* v. *Raskin,* 173 *Ga.* 746 (161 S. E. 363); *Highfield* v. *First Nat. Bank of Rome,* 45 *Ga. App.* 431 (165 S. E. 135); *Felder* v. *Felder,* 71 *Ga. App.* 860 (32 S. E. 2d 550). An opinion by either of our appellate courts prior to the passage of a statute must yield to the statute where the two are in conflict. Constitution, art. XIII, sec. I, par. III (Code, Ann., § 2-8003).

In the amendment of 1952 (Ga. L. 1952, p. 305; Code, Ann. Supp., § 16-439), with reference to savings-account books in savings and loan institutions, it is provided: "Those dealing with such savings account books and certificates shall be bound by the record on the books of the association"; and "the only way

an effective transfer or pledge may be accomplished is by transfer on the books of the association . . ."

Under the statutory law above cited, there having been no transfer of the account of the decedent pursuant to the alleged gift causa mortis, Fulton County Federal Savings & Loan Association could only pay the funds of the decedent which. it had on deposit to the temporary administrator, and the association would have been relieved of "all liability as completely" as if payment had been made to the decedent in her lifetime. Code (Ann. Supp.) § 16-433; *Lassiter* v. *Bank of Dawson*, 191 *Ga.* 208 (11 S. E. 2d 910). In the *Lassiter* case, supra, it appears that Lassiter had qualified as temporary administrator after the action of the bank for interpleader was filed, and in the *Lassiter* case (at page 220) it was held: "Lassiter, as temporary administrator of William F. Talbot, was authorized to collect and to take care of the fund, in accordance with his bond, 'until permanent letters are granted' either to an executor or to a permanent administrator; and so it was the duty of the bank to pay the fund over to him." The ruling in the *Lassiter* case should be controlling here.

Furthermore, a temporary administrator is not a proper party to defend a claim asserted against the decedent or his estate. The rights, duties, and powers of a temporary administrator have many times been defined by this court. In *Banks* v. *Walker*, 112 *Ga.* 542, 544 (37 S. E. 866), it was said that the Code declares that "a temporary administrator may sue for the collection of debts or personal property of the intestate." It was then said: "There is no other section of the code which can be construed as giving to the temporary administrator any larger powers than these. Thus the scheme of the code seems to be to charge the temporary administrator with the collection of the personal property only." See also Code § 113-1511; *Ewing* v. *Moses*, 50 *Ga.* 264; *Langford* v. *Langford*, 82 *Ga.* 202, 204 (8 S. E. 76) ; *Irvine* v. *Wiley*, 145 *Ga.* 867, 868 (90 S. E. 69) ; *Collins* v. *Henry*, 155 *Ga.* 886 (118 S. E. 729) ; *Arnold* v. *Freeman*, 181 *Ga.* 654, 657 (183 S. E. 811). In *Furr* v. *Jordan*, 196 *Ga.* 862, 874 (27 S. E. 2d 861), it was said that a temporary administrator "can neither pay debts nor distribute an estate to heirs."

It is my opinion that the case of *Cannon* v. *Williams*, 194 *Ga.*

808 (22 S. E. 2d 838), is not authority for the proposition that a temporary administrator can be required to interplead and defend an action against the decedent's estate. In the *Cannon* case Mrs. Williams was the permanent and not the temporary administratrix. Since my learned associates have not cited any statute or prior decision of this court to the effect that a temporary administrator can be required to interplead and defend an action against the decedent's estate, and since I have been unable to find such a statute or decision, I must assume that no such decision existed prior to the court's opinion in the present case.